### David S. Leavitt v. Martha Leavitt.

*Divorce suit — withdrawal of answer.* — Where, in a divorce suit, an answer is filed and subsequently withdrawn, no divorce should be granted without some satisfactory evidence showing that the withdrawal was voluntary, and at the same time not collusive.

*Marriage — what frauds will invalidate.* — Those frauds which will invalidate a marriage are usually, at least, such as negative any consent to be married, without reference to previous inducement. The common cases are duress, surprise or stratagem in procuring the marriage to be carried out; and the fraud must usually be nearly, if not absolutely, co-incident in time with the marriage, and operate to destroy that intelligent consent which is required for the marriage itself, rather than the preliminary engagement.

Where a bill was brought by a husband, some twenty years after marriage, to procure a decree of nullity, on the ground of fraud in the marriage contract, and the bill alleged that the defendant was guilty of ante-nuptial inchastity, that her chastity was made the subject of frequent and diligent inquiry by him before marriage, and that the defendant made specific and open assertion to him on the subject, upon the falsehood of which, and his own inability

to ascertain anything on the subject, he based his sole claim to relief;— *Held*, That the bill failed to make out a case of fraud, and that complainant was not entitled to the relief asked.

*Heard July 6.    Decided October 16.*

Appeal in Chancery from Kent Circuit.

The complainant in this case filed his bill to procure a decree annulling his marriage with defendant, upon the ground of fraud in the marriage contract.    The bill set forth his marriage with the defendant on the 24th day of May, 1841 ; that they lived together in that relation until the month of January, 1862, and that there were eight children issue of said marriage, seven of whom were still living.    It alleged that, prior to the marriage, complainant made diligent inquiry in reference to the chastity of defendant, and was assured, both by her and her parents, that she was of good moral character, and that the reports derogatory to her character were false, and that complainant, after careful " inquiry, was unable to discover or learn of any act or conduct disreputable to her."    The bill then alleged several specific acts of sexual intercourse between defendant and different men, prior to her marriage with complainant, and that " she was enabled to deceive the complainant, and did deceive him, as to her chastity and virtue ; " that the discovery of the facts charged was recent, and that, since their discovery, complainant had not cohabited with defendant.

· Defendant having appeared and answered, her answer was afterwards withdrawn, and the bill taken as confessed.

The only evidence in the case was that taken on behalf of complainant, the nature of which sufficiently appears in the opinion.

By the decree of the Court below the bill was dismissed.

*C. I. Walker* for complainant.

1. Fraud vitiates all contracts, and the defrauded party, who applies without unreasonable laches after the discovery of the fraud, is entitled to have the contract annulled. — *Carroll v. Rice, Walk. Ch.,* 373.

That the contract of marriage is no exception to this general rule, is not only shown by the statute, but the decisions of Courts have fully settled the point. — *Comp. Laws,* §3223; *Barnes v. Wyeth,* 28 *Vt.,* 41; *Ferris v. Ferris,* 8 *Conn.,* 166; *Scott v. Shufeldt,* 5 *Paige,* 43; *Morris v. Morris, Wright,* 630; *Ritter v. Ritter,* 5 *Blackf.,* 81; *Robertson v. Cole,* 12 *Texas,* 356; *Burtis v. Burtis, Hopk.,* 567; *Ferlat v. Gojon, Hopk.,* 478; *Hull v. Hull,* 5 *E. L. & E.,* 589; *True v. Ranney,* 1 *Fost.,* 52; *Keyes v. Keyes,* 2 *Fost.,* 553.

2. Complainant's remedy against the fraud is not barred by lapse of time.

He sought his remedy immediately on discovering the fraud; and the Courts fully recognize the principle, which alone is just in such a case, that complainant will lose no rights by neglecting to act while he remained ignorant of the wrong practiced upon him. — *Hovenden v. Lord Annesley,* 2 *Sch. & Lef.,* 634; *Bond v. Hopkins,* 1 *Sch. & Lef.,* 413; *Magne v. Griswold,* 3 *Sandf. S. C. R.,* 482; *Phalen v. Clark,* 19 *Conn.,* 421; *Deloraine v. Brown,* 3 *Brown C. C.,* 633; *Blair v. Browley,* 5 *Hare,* 542; *Hough v. Richardson,* 3 *Story,* 659; *Payne v. Hathaway,* 3 *Vt.,* 212; *Troup v. Smith,* 20 *Johns.,* 47.

3. The fraud in this case was of that gross and scandalous character which should entitle the complainant to the favorable consideration of the Court, and obtain him the relief he prays, unless some inflexible rule of law forbids it.

Not only would the contract not have been entered into with knowledge of the circumstances, but the Courts

recognize the discovery of prior want of chastity as fully justifying a breach of the promise of marriage. — *Irving v. Greenwood*, 1 *C. & P.*, 350 ; *Young v. Murphy*, 3 *Bing. N. C.*, 54. See, also, *Foster v. Hayne*, 1 *C. & P.*, 545 ; *Willard v. Stone*, 7 *Cow.*, 22 ; *Johnston v. Calkins*, 1 *Johns. Cas.*, 116.

4. No inflexible rule of law forbids the decree prayed in this case.

On the contrary, the general rules of equity allow it, as we have already shown by our citations of decisions.

And there are decisions in divorce cases, the principles of which fully sanction the relief here asked. The cases of *Scott v. Shufeldt*, 5 *Paige*, 43 ; *Ritter v. Ritter*, 5 *Blackf.*, 81 ; *Montgomery v. Montgomery*, 3 *Barb. Ch.*, 132 ; *Morris v. Morris*, *Wright*, 630 ; *Reynolds v. Reynolds*, 3 *Allen*, 605 ; 13 *California*, 87, were all cases where the marriage was annulled for fraud in respect to the woman's chastity.

CAMPBELL J.:

Complainant filed his bill to procure a decree of nullity upon the ground that his marriage was induced by fraud. The fraud charged is that the defendant was guilty of unchaste conduct before marriage, and yet represented herself to be chaste and virtuous; and that she declared that any charges which might be made to the contrary were false. The bill states that complainant made diligent inquiry concerning her character, and could learn nothing to her discredit — a fact which he attributed to her belonging to a church of which he was not a member. He avers that the discovery of the facts charged has been recent, and that since the discovery he has not cohabited with her.

The defendant appeared and answered, but the answer appears to have been subsequently withdrawn by her counsel, and the complainant was permitted to take his

testimony *ex parte*. We feel it our duty to say that in a divorce suit this is an unusual and peculiar course, which should at least be closely scrutinized; and under such circumstances no decree should be granted without some satisfactory evidence showing that the withdrawal was voluntary, and at the same time not collusive. The Court below having dismissed the bill, the appeal has nevertheless been heard by us likewise *ex parte*, no one appearing to represent the defendant. We cannot suspect that she has been guilty of collusion, when the charges against her are of such a character as are spread out in the record; but we regret extremely that in such a case no one has appeared on her behalf.

The first question which presents itself is, whether, admitting the allegations in the bill to be true, the frauds complained of will avoid a legal marriage. The learned counsel for the complainant did not refer us to any case in which mere incontinence has been held to avoid a subsequent marriage. Chastity is not a requisite to the validity of a marriage, and, while marriage is in a very important sense a contract, it is also a relation, governed by rules of public policy, which apply to no mere private agreements. Fraudulent representations of wealth, or connections, or health, or temper and disposition, may in many cases be the chief inducements to matrimonial alliances, but no one has ever supposed that a marriage could be avoided for such frauds. It cannot be denied that marriages have often been made knowingly with unchaste women, although such alliances are not to be expected from persons of any very refined sensibilities. It is not denied that the decided cases entirely fail to recognize ante-nuptial incontinence as a ground of nullity, whether concealed by falsehood or simply not referred to at all. And if it can be regarded as a ground of nullity at all, the fact that there are

LEAVITT v. LEAVITT.

representations made on the subject cannot change or increase the evil very much.

Those frauds which will invalidate a marriage are usually, at least, such as negative any consent. to be married at all, without reference to previous inducements. The commoner cases are duress, surprise, or stratagem, in procuring the marriage itself to be carried out; and the fraud must usually be nearly, if not absolutely, coincident in time with the marriage, and. operate to destroy that intelligent consent which is required for the marriage itself, rather than the preliminary engagement. If there are other cases, they must be peculiar and exceptional. That such must be the general rule must be very clear, from the cases industriously collected by Mr. Bishop, in his chapter on "consent obtained by fraud, error and duress," in which the whole subject is fully elaborated. Our statute contemplates that such must be the ordinary doctrine, for it prohibits any decree of nullity for fraud, ·if the parties at any time have voluntarily cohabited. — 2 C. L., (§3258.) And there is a consideration of much weight deducible from the rules of exclusion of confidential communications between husband and wife. Were a wife never so guilty, yet, if her husband had been informed by herself of her crime, and repentance, and had been willing to marry her notwithstanding her previous behavior, he could not be listened to for a moment in any subsequent complaint for it. But, by the rules of evidence, he can. never be compelled to disclose that he has been so informed, and she could not, therefore, prove it. But, aside from this, it would not tend to establish the security of the domestic relation, if it could be annulled after parties had lived together, by such proofs of previous misbehavior, whether true or false. It would prevent the reform of many who have been as much sinned against as sinning, and it would put the reputation of the virtuous at the risk of being destroyed by

testimony very easily fabricated, and extremely difficult to disprove except by the negative testimony of general good character. We are not disposed to go beyond what has been already fixed by safe authorities in unsettling the marriage relation.

The only cases cited on the argument, which have been supposed to favor divorces for ante-nuptial misbehavior, are cases where there was actual pregnancy at the time of the marriage. Without attempting to examine at length into the reasoning of these decisions, it is sufficient to say that such circumstances introduce very different evils from those attending on previous fault alone. They have a direct tendency to confuse inheritances, and create disputes of legitimacy. If such a case should be presented, we should be called upon to decide a question not presented by this record.

We are satisfied that the complainant's bill makes out no case for relief, even if the suit had been brought soon after marriage. And, had not the case been presented on a very peculiar state of proofs, we should not deem it necessary to make any further comment on it than to remark the monstrous absurdity which would attend any rule of law, which would permit a person who has lived with the complainant, upon his own showing, as a faithful partner, for more than twenty years, and has borne him many children, to be now repudiated on such a stale pretence. But justice to the defendant requires the true character of this litigation to be presented.

The complainant has alleged in his bill the somewhat singular facts that the chastity of defendant was made a subject of frequent and diligent inquiry by him, among her friends and relatives, and also of herself in presence of others, to a degree which was complained of as offensive, and that defendant made specific and open assertions to him on the subject; and he bases his claim for relief entirely on the falsehood of these assertions,

and his inability, after due diligence, to ascertain any. thing on the subject. The bill was drawn by himself and sworn to, so that he must have fully understood what case he was making. Such a state of things, if true, would of itself go very far to preclude any claim to relief; for it is incredible that any decent man could enter upon such an elaborate course of investigation without having heard or seen something calculated to arouse strong suspicions. The denials of defendant, as he relates them, refer directly to reports derogatory to her character. If complainant saw fit to marry a person against whom appearances had gone so far as this bill inevitably would lead us to suppose they had, it would be a very strained consideration which would regard him as seriously wounded in feeling or reputation, by a discovery of what had been so stronly suspected before.

But while these averments of his diligence and of her statements are all susceptible of proof, if true, he has not even attempted to prove a single one of them. Had they been proved, they might have had a tendency to corroborate the good faith of such testimony of misconduct as he has introduced. The marriage was not on short acquaintance, and the parties were neighbors in a small settlement. Instead of attempting to prove what he has charged as actual fraudulent representations and concealments, under questions put to elicit the truth, he has simply contented himself with attempting to prove misconduct.

The proof itself is open to the most serious animadversion. We find, by reference to the original files, that the complainant's case was allowed to be reheard twice, and each time on additional evidence, the Court not being satisfied with what was already in. The complainant, therefore, on each of these occasions, undertook to make his case stronger upon the facts already alleged, as no new charges were admissible. In more than one instance

LEAVITT v. LEAVITT.

this was attempted by a re-examination of the same witnesses who had been examined before *ex parte*, and who had undertaken to state all they knew, and a good deal that they had heard or surmised. The very parties who were supposed to be guilty participants in her crime were examined, and in some instances re-examined, with a full understanding that the Court required more convincing proof. Yet, under all these circumstances, none of the witnesses swore directly to the actual offence. It is true that the proof of such offenses must usually be to a great extent circumstantial; but, when proof is offered by the party who must know the fact, if it existed, it would be very unsafe to allow any mere inference when there is nothing to prevent direct proof. One of the witnesses, indeed, made a great parade of his being unwilling to criminate himself, but when it was decided he must answer the question, it was not again propounded to him. The other witnesses professed no scruples, and were not asked at all whether the offence was committed; but complainant inquired at length into various indecencies, stopping short of the direct charge. Taking all of the appearances into the account, it is impossible to conclude that the complainant has not proved all he could prove. The witnesses were not reluctant, and it is very certain they were not scrupulous on the point of decency. If we could believe their stories, they, when in mature years, were guilty of the most infamous villainies, in practicing upon a young girl, who was barely more than a child in years and knowledge, the most disgusting indecencies, in the presence of her parents and near relatives, and under circumstances when it was impossible not to at least arouse their suspicions. The testimony shows that not one of the main witnesses was fit to be tolerated in any decent community; and when its peculiarities are considered, its omissions and its remarkable statements, and the fact that it turns up for

the first time after more than twenty years, and, in the case of two witnesses at least, in revenge for wounded vanity, we think no tribunal, with a decent regard to common sense, could allow any one's character to be destroyed by such proofs. If such witnesses, under such circumstances, can be relied on as truthful, when they have not even been subjected to cross-examination, and have been allowed to indulge in hearsay and inadmissible statements, it would not be very difficult to satisfy a Court of anything.

We are glad to say that no case has yet appeared in our Court like this, either in the wicked absurdity of the cause of action, or in the equally disgraceful character of the testimony which has been galvanized, after this long interval, to maintain it. We trust, for the honor of humanity, that it will stand alone. It would not be an edifying spectacle for a Court of justice to allow the witness of twenty years of virtuous fidelity to be overthrown by such evidence. Nor would it be more defensible to admit even clear proof of misconduct in youth to break up a household where children have been brought up, from infancy to maturity, by a mother whose married life had been blameless. The proceeding has no redeeming feature, and we should feel that we had done less than our duty had we omitted to express our disgust and abhorrence at it.

The decree below must be affirmed.

MARTIN and CHRISTIANCY J.J. concurred.

COOLEY J. did not sit in this case.