## Varney vs. Varney.

*March 28 — April 19, 1881.*

Divorce.   *(1) For what fraud a marriage will be adjudged void.   (2) Order for payment of wife's expenses of litigation.*

1. Sec. 2350, R. S., provides that "when the consent of either party" to a marriage "*shall have been obtained by force or fraud,* and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be void from such time as shall be fixed by the judgment of a court of competent authority declaring the nullity thereof." *Held,* that concealment by the woman, before the marriage, of her previously unchaste character, or representations falsely made by her inducing the other party to believe her chaste, are not such a fraud as will support a judgment declaring a marriage void.

2. In this action by the wife for a divorce, the husband set up a counterclaim for a divorce for adultery of the wife, and also a counterclaim to have the marriage declared void for fraudulent concealment by the wife, before marriage, of her previous unchastity.  The issues on both counterclaims were found against the husband; and the court ordered him to pay the wife's attorney $575 for expenses of her defense.  *Held,* that, in view of the protracted litigation and the work and expenditures involved therein, the amount allowed was not an abuse of discretion; and that it is competent for the court to make such an allowance by order *before* judgment (which need not be included in the judgment), as well as by order *after* judgment.

APPEAL from the Circuit Court for *Winnebago* County. Defendant appealed from a judgment in favor of the plaintiff.  The case is stated in the opinion.

*D. W. C. Priest,* for the appellant.

For the respondent there was a brief by *Coleman & Spence,* and oral argument by *Mr. Spence.*

Taylor, J.  This is an action brought by the respondent to obtain a divorce from the appellant on the ground of cruel and inhuman treatment, and failure to provide her with maintenance and support.  The appellant denied the matters charged in respondent's complaint, and then, by way of counterclaim, alleged that the respondent had been guilty of adultery, since

Varney vs. Varney.

her marriage with him, and demanded a judgment of divorce from the respondent upon such counterclaim. And, as a separate defense and counterclaim, he alleged that his marriage with the respondent was procured through the fraudulent and false representations of the respondent as to her previous character for chastity, and asked the court to adjudge the nullity of the marriage on that account. Upon the trial of these several issues, the circuit court refused a divorce on the complaint of the respondent, for want of sufficient proof of the charges alleged against the appellant. The charge of adultery subsequent to the marriage, made by the appellant against the respondent, was abandoned by him upon the trial, he being wholly unable to establish the same by proofs. And upon the trial of his second counterclaim, upon which the court was asked to declare the marriage void on account of fraud, the court found against the appellant, dismissed such counterclaim, and ordered the appellant to pay T. W. Spence, one of the respondent's attorneys, the sum of $575 as a sum necessary to enable her to carry on this action during its pendency to defend against the counterclaims set up in the appellant's answer.

The appellant appeals from the judgment of the court dismissing his counterclaim setting up fraud as a ground for declaring the marriage void, and upon this appeal he also claims that the court erred in awarding the said sum of $575 as suit money in favor of the respondent's attorneys. The allegations in the appellant's answer, setting up the alleged fraud on account of which he asks relief, are as follows: "That, for the purpose of inducing this defendant to consent to the said marriage, the plaintiff falsely and fraudulently represented that she was a chaste and virtuous woman, which representations the defendant believed and relied upon to be true;" "that the plaintiff was, in fact, unchaste and of lewd habits, and was the mother of an illegitimate child born out of wedlock, but which had died before such marriage with the defendant; which facts the plaintiff fraudulently concealed from this defendant,

and which first became known to this defendant since this action was commenced and since the first answer was interposed herein; and that since the discovery of said facts, and that said representations were false, this defendant has not cohabited with the plaintiff."

The first and most important question in the case is, whether the concealment from her husband by the wife of her unchaste character previous to her marriage, or false representations made by her upon that subject previous to the marriage, in order to induce him to marry her, is such a fraud as renders the subsequent marriage void.

If a marriage can be avoided for the reasons above stated, it must be under the provisions of section 2350, R. S. 1878, which provides that, " whenever either of the parties to a marriage, for want of age or understanding, shall be incapable of assenting thereto, or when the consent of either party shall have been obtained by force or fraud, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be void from such time as shall be fixed by the judgment of a court of competent authority declaring the nullity thereof." It is clear that, under our statutes upon the subject of divorce, no fraud practiced by either party to the contract of marriage upon the other, previous to the marriage, is a ground for divorce. All divorces are granted for causes occurring after the marriage contract is entered into, except for impotency, and that is a cause which continues after marriage, though it exists before. But a judgment of nullity of the marriage contract proceeds upon matters occurring before or at the time the marriage contract is entered into. The appellant in this action, by his counterclaim, invoked the aid of the court to relieve him from the marriage, not on account of any misconduct of his wife subsequent to her marriage, but for her misconduct before; and he insists that because she concealed her previous misconduct from him, and made false representations concerning it in order to induce him

to marry her, she obtained his consent to such marriage by fraud, within the meaning of said section, and he is therefore entitled to the judgment of the court declaring his marriage with her void.

The question whether the concealment of, or false representations as to, the previous character of a female for chastity, made to the person who afterwards marries her, and for the purpose of inducing him to do so, and upon which he relies, is such a fraud as will render the subsequent marriage void, has been frequently before the courts, both in this country and England, and we are unable to find that any court has declared a marriage void for that reason. The furthest the courts have gone is, to hold that when such previous unchaste conduct has resulted in pregnancy, which exists at the time of the marriage and was unknown to the husband, the marriage will be declared void on account of the fraud. The question was very fully and ably discussed by the supreme court of Massachusetts, under a statute substantially like ours, in the case of *Reynolds v. Reynolds*, 3 Allen, 605. The argument in that case is so full and complete as to leave little room for adding to the conclusiveness thereof. I have therefore taken the liberty of quoting largely therefrom, as being the best method of stating the argument in the strongest and clearest manner. Chief Justice BIGELOW, who delivered the opinion in that case, says: "It is quite obvious, from the terms in which the statute is expressed, that it was founded on the assumption that a marriage into which one of the parties was induced to enter through the fraud and deception of the other, is null and void, and, like other contracts, may be annulled and set aside by the defrauded party. . . . Nor does it define or in any way prescribe the nature of the fraud, or the degree or amount of deception which shall be deemed to be sufficient to warrant the court in adjudging the contract to be void. This is left to be determined on general principles applicable to all contracts, *subject only to such restrictions and modifications as neces-*

*sarily arise and grow out of the peculiar nature of the contract of marriage.*"

After making some general remarks upon the nature of the fraud which will in general vitiate ordinary contracts relating to business, and remarking that the only general rule which can be safely stated is, that the misrepresentation or conceal-ment must be of some material fact, the learned chief justice says: "While, however, marriage by our law is regarded as a purely civil contract, which may well be avoided and set aside on the ground of fraud, it is not to be supposed that every error or mistake into which a person may fall concerning the character or qualities of a wife or husband, *although occasioned by disingenuous or even false statements or practices, will afford sufficient reason for annulling an executed contract of marriage.* ·In the absence of force or duress, and where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circumstances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. Therefore no misconception as to the character, fortune, health or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice. These are accidental qualities, which do not constitute the essential and material elements on which the marriage relation rests. The law, in the exercise of a wise and sound policy, seeks to render the contract of marriage, when once executed, as far as possible indissoluble. The great object of marriage in a civilized and Christian community is to secure the existence and permanence of the family relation, and to insure the legitimacy of offspring."

The learned chief justice then lays down the rule that, as to all matters which relate to fortune, health and character, including chastity, of the person with whom a contract of marriage is made, the parties are bound to make their own

Varney vs. Varney.

investigations and inquiries before the contract is consummated; and when the contract is consummated without force and without any mistake as to identity, the courts will not permit any inquiry into those matters for the purpose of avoiding. the contract, and then proceeds as follows: " The law, therefore, wisely requires that persons who act on representations or belief in regard to such matters, should bear the consequences which flow from contracts into which they have voluntarily entered, after they have been executed, and affords no relief for the results of a 'blind credulity, however it may have been produced.' . . . Nor is it unreasonable that each one should take on himself the burden of inquiring into representations concerning the character and qualities of the person whom he intends to marry, which, by the exercise of due caution and discretion, can be ascertained to be true or false, instead of lying by and using them to defeat a contract after it has become executed and a portion of its fruits has been enjoyed."

The learned chief justice then states that some of the civil-law writers have thought that antenuptial incontinence and want of chastity in a woman was a good ground for avoiding the marriage, when it was concealed from the husband and he was led to believe that she was chaste and virtuous; but he adds: " The better opinion seems to be, that chastity stands on the same ground as other personal qualities; that there is nothing in the contract of marriage which implies that a woman shall have previously been pure and undefiled, or which renders unchastity prior to the execution of the contract an impediment to a valid marriage. . . . Nothing can avoid it which does not amount to a fraud in the *essentialia* of the marriage relation. And as mere incontinence in a woman prior to her entrance into the marriage contract, not resulting in pregnancy (existing at the time of the marriage), does not necessarily prevent her from being a faithful wife, or from bearing to her husband the pure offspring of his loins, there

seems to be no sufficient reason for holding misrepresentation or concealment on the subject of chastity to be such a fraud as to afford a valid ground for declaring a consummated marriage void. In regard to continence, as well as to other personal traits and attributes of character, it is the duty of a party to make due inquiry beforehand, and not to ask the law to relieve him from a position into which his own indiscretion or want of diligence has led him. Certainly it would lead to disastrous consequences, if a woman who had once fallen from virtue could not be permitted to represent herself as continent, and thus restore herself to the rights and privileges of her sex, and enter into matrimony, without incurring the risk of being put away by her husband on discovery of her previous immorality. Such a doctrine is inconsistent with reason and a wise and sound policy."

The doctrine of this case is fully sustained by all the authorities cited by the learned counsel for the respective parties, and we do not find that a contrary rule has been held by any court where a similar question has been raised. See *Perrin v. Perrin*, 1 Addams Ec., 1; *Reeves v. Reeves*, 2 Phill. Ec., 125; *Graves v. Graves*, 3 Curteis Ec., 235; *Scroggins v. Scroggins*, 3 Dev. (N. C.), 535; *Leavitt v. Leavitt*, 13 Mich., 452–456; *Benton v. Benton*, 1 Day, 111; *Baker v. Baker*, 13 Cal., 87; *Foss v. Foss*, 12 Allen, 26; *Crehore v. Crehore*, 97 Mass., 330; Bishop on Marriage and Divorce, §§ 167, 168, 180–190, and cases cited. Bishop says, section 167: "When the question comes before a tribunal, whether a particular contract is void by reason of fraud shown to have entered into its original constitution, many things may demand consideration. Among these things the nature of the contract must be taken into account; for what would avoid one kind of contract may not necessarily be sufficient to avoid another. In that contract of marriage which forms the gateway to the *status* of marriage, the parties take each other for better, for worse, for richer, for poorer, to cherish each other in sickness and in health; conse-

quently a mistake, whether resulting from accident, or, indeed, generally, from fraudulent practices, in respect to the character, fortune, health, does not render void what is done. To this conclusion all the authorities conduct us, but different modes for stating the reason for it have been adopted." He then gives Lord STOWELL's reason as follows: "A man who means to act upon such representations should verify them by his own inquiries. The law presumes that he uses due caution in a matter in which his happiness for life is so materially involved, and it makes no provision for the relief of a blind credulity, however it may have been produced." *Wakefield v. Mackay*, 1 Phill., 134-137. Bishop's own opinion, as expressed in section 168, is, "that the nature of the marriage contract forbids its validity to rest upon any stipulations concerning these accidental qualities. If a man should, in words, agree with the woman to be her husband only on condition of her proving so rich, so virtuous, so wise, so healthy, of such a standing in society, yet if he afterwards celebrates the nuptials on her representing herself to possess the stipulated qualities, while in truth she is destitute of them, still, in such celebration, he says to her, in effect and in law, 'I take you to be my wife whether you have the qualities or not, whether you have deceived me or not.' In other words, he waives the condition. To carry such a condition into the marital relation would violate its spirit and purpose, and be contrary to good morals."

These cases, we think, clearly establish the doctrine that the counterclaim of the defendant, alleging fraud as a ground for avoiding the marriage contract, does not state facts sufficient to authorize the court to declare the contract void, had they all been fully proved on the trial. Notwithstanding the learned counsel for the appellant seemed to think these decisions were not in accord with the spirit of progress which pervades our present high state of civilization, we are unable to agree with him in that statement. We are clearly of the opinion that the highest and best interests of present society demand that these

doctrines of the courts, which have come down to us from the time of the earliest Christian civilization, should still be adhered to, especially in this country, where, if a previously unchaste woman enters into marriage without reformation in fact, the mistaken husband has abundant means of getting rid of his unfortunate alliance in an action for a divorce for her misconduct after marriage; and if she enters the married state reformed, and continues faithful to her marriage vows, every consideration of justice and humanity demands that the past should be considered forgiven and forgotten. This view of the case renders it unnecessary to consider the question whether the appellant had notice of the previous unchaste character of his wife before his marriage with her.

But the appellant admits that before the marriage he had notice that the respondent had not always lived a pure and virtuous life, and he cannot plead that he supposed, when he married her, he was marrying a woman whose character for chastity was above reproach. He is hardly in a position, therefore, to allege that he was even deceived in respect to this subject, and must be presumed to have waived any objection to the marriage on account of her former unchaste character. If the appellant knew, before his marriage with the respondent, that she had not been of previous chaste habits, he cannot afterwards plead that he was defrauded because he did not know the exact degree of her unchastity. Upon this point, Justice CAMPBELL, in *Leavitt v. Leavitt*, 13 Mich., 458–9, says: "The complainant has alleged in his bill the somewhat singular facts that the chastity of defendant was made a subject of frequent and diligent inquiry by him among her friends and relatives, and also of herself, in the presence of others, to a degree which was complained of as offensive, and that the defendant made specific and open assertions to him on the subject; and he bases his claim for relief entirely on the falsehood of these assertions, and his inability, after due diligence, to ascertain anything on the subject. The bill was drawn by

himself and sworn to, so that he must have fully understood what case he was making. Such a state of things, if true, would of itself go very far to preclude any claim for relief; for it is incredible that any decent man could enter upon such an elaborate course of investigation without having heard or seen something calculated to arouse strong suspicions. The denials of the defendant, as he relates them, refer directly to reports derogatory to her character. If complainant saw fit to marry a person against whom appearances had gone so far as this bill inevitably would lead us to suppose they had, it would be a very strained consideration which would regard him as seriously wounded in feeling or reputation by a discovery of what had been so strongly suspected before."

After the information which the appellant had of the character of the respondent before he married her, he has no legal ground for alleging that he was deceived and defrauded as to her chastity.

We think the court had power to order the appellant to pay the attorney's fees and the respondent's disbursements in and about her defense of the counterclaims of the appellant. As to these counterclaims, he was in the position of plaintiff, demanding a judgment of divorce against the respondent. As it appeared that the respondent had no means of her own out of which her attorneys and her necessary disbursements could be paid, it is in accordance with the usual practice of courts to make the plaintiff, when sufficiently able, pay such expenses. A question similar to the one presented by the objection to this allowance arose in the case of *Downer v. Howard*, 44 Wis., 83–92. In that case the court said: "It is almost a matter of course to award to the wife, when she is plaintiff in a divorce suit, money to carry on the same; and when she is defendant it is always awarded, unless, perhaps, in a case where it appears that she has a separate estate which is adequate to meet all such expenses." In that case, as in this, the order to pay the expenses of the plaintiff for defending against a counter-

claim of the defendant was made after the court had announced its decision dismissing the complaint and the defendant's counterclaim, but before a formal judgment of dismissal was entered, and was made a part of the formal judgment. In the case at bar, the order appears to have been made after the court had made its findings in the action, but before the final judgment was formally entered by the court; but it was not made a part of the judgment. We do not think it important that the order making the allowance is not inserted in the judgment; it may be enforced as an order of the court made in the action.

It was argued by the counsel for the appellant, that the court had no power to make the order after final judgment in the action. That question is not in this case, as it appears to have been made before final judgment; and, if it were otherwise, then it could not be considered upon this appeal from the judgment, as an order made in the action after judgment cannot be reversed upon such appeal. This court held, in *Williams v. Williams*, 29 Wis., 517, that an allowance for suit money in a divorce case might be made after judgment as well as before. It was also held in that case that such allowance of suit money is a matter very much in the discretion of the trial court. We cannot say from the record that the allowance in this case was unreasonably large, or that the learned judge, in making the same, was guilty of any abuse of the discretion vested in him by the law upon that subject. The litigation appears to have been protracted, and of a nature to require a large amount of work and considerable expenditure of money on the part of the respondent to meet the issues raised by the appellant's counterclaims. It would seem from the whole case that the court was fully justified in making the allowance.

*By the Court.*—The judgment of the circuit court is affirmed.