COPELAND

*v.*

COPELAND.

(*Supreme Court of Appeals of Virginia, March 14, 1895.*)

[21 S. E. Rep. 241.]

Divorce—Marriage under Duress—Evidence of Insufficient.*

One is not entitled to a divorce on the ground that the marriage was contracted under duress, where the only evidence of duress is the fact that, having been arrested on the charge of seduction, he married defendant to avoid the prosecution.

Appeal from circuit court, Wythe county.

Bill by Samuel C. Copeland against Josephine Copeland for a divorce.

Defendant had a decree, and plaintiff appeals.    Affirmed.

*Blair & Blair*, for appellant.

CARDWELL, J.,   delivered the opinion of the court.

Samuel C. Copeland (appellant) was, on the 22d day of February, 1890, arrested on a warrant from a justice of the peace in the county of Wythe, charging him with having seduced, under promise of marriage, Josephine, alias Josie, Swecker, and, upon his arrest, was bailed to appear before the justice on the 5th of March, 1890, for trial.   On the 5th of March, 1890, a marriage took place between the accused and Josie Swecker,

*See generally, monographic note on "Divorce" appended to Baily *v.* Baily, 21 Gratt. 43 (Va. Rep. Anno.).

Va Dec—6

and the prosecution then terminated.    After the lapse of four years, Samuel C. Copeland filed his bill of complaint at July rules, 1894, against Josephine Copeland, his wife, for a divorce on the ground that he was married to her under duress ; that she, at the time of the marriage, was pregnant, without the knowledge of complainant ; and that she had deserted or abandoned him for over four years.    The bill was never answered by the defendant, but the depositions of several witnesses, after notice to the defendant accepted by her, were taken, and the cause was heard before the circuit court for Wythe county at the regular term September 17, 1894, when the court, by its decree, refused the relief prayed for, and dismissed the complainant's bill, with costs to the defendant.    From this decree an appeal, with supersedeas, was allowed by one of the judges of this court.

This is a striking case of want of correspondence between the allegata and the probata.    The bill charges "that the appellant was forced to marry appellee under and by the threats of the officers who made his arrest, as above stated, who were relatives of the appellee, and heavily armed; that the appellee was pregnant at the time of the marriage,—not by him, but by some one else,—and that he did not know this fact until five months after the marriage; that he could not safely remain at the house where he was married, and went back to his work, he being but a laborer, having no home, and his wife having none, but was living with her mother; that he resumed his work at Bertha, and never lived with her at all, as she never came to him, but refused to do so, and he never went to her mother's house, although he worked within a few miles of her, etc.; that they never did live and cohabit as man and wife, from a kind of a mutual repulsion, but she wholly neglected and refused to live with or come to him, or in any way seek the protection of said marriage, as it was well known to have been obtained by fear and force, and hence void in law."    The witnesses examined in support of these allegations

were four in number, including appellant, who was examined
on his own behalf, notwithstanding his incompetency as a wit-
ness against his wife.    The statute (Acts Assem. 1893–94, p.
722) making husband and wife competent to testify for and
against each other expressly provides that nothing contained
in the act shall be deemed or construed to alter the existing
rules of evidence as to proceedings for divorce.    In prosecu-
tions for seduction under promise of marriage, section 3679 of
the Code of Virginia provides "that the subsequent marriage
of the parties may be pleaded in bar of a conviction"; and,
where the marriage takes place under these circumstances, it
must be presumed that the accused is actuated in consenting
thereto by the consciousness of his guilt as charged, or that he
avails himself of this provision of the law to avoid further
prosecution; and in this case this presumption is strongly sup-
ported by the fact that, if appellant had been forced, as
alleged in his bill, to marry appellee by reasons of threats of
personal violence made at the time of the marriage, he would
not, as it is also reasonable to suppose, have remained silent
for over four years.    This marriage did not occur under any
sudden or unexpected condition of things.    He, by his own
showing, was arrested on the 22d of February, and let to bail,
and the marriage did not take place until the 5th of March,—
making it perfectly plain that, if he feared violence to his per-
son, he could and would have appealed to the officers of the law
for protection ; but, instead of this, according to the testimony
of his own witnesses, he sought to relieve himself from the con-
sequences of the prosecution by the payment of money to the
prosecutrix.    The appellant himself being incompetent to
testify on his own behalf, as we have seen, the only other
testimony to sustain the allegations of the bill, is as fol-
lows: James F. Brown, the justice who issued the war-
rant, and before whom the same was pending, was also
a minister, and performed the marriage ceremony on the
occasion of this marriage, and, being introduced by the

appellant, testified that appellant offered Josephine Swecker and her mother certainly $200 to release him, but nothing but marriage would suffice, and that he married them ; further, that Mr. Copeland (appellant) remarked to him that he would rather die than to marry her, but would have to, or do worse. This witness further testified that, although there were quite a number of relatives and friends of Josephine Swecker present, he heard no threats, though threats might have been made. J. W. Hoskins, another witness for appellant, in answer to the question, "Please state if you were present when S. C. Copeland was forced to marry Josephine Swecker, on the 5th of March, 1890,"—answered : "Was not present. Don't know that he was forced. The law forced him to marry her." John W. Owens, the only other witness examined, was asked, "Did S. C. Copeland marry her of his own will, or was it against his will, and by force, and under threats of violence ?" (a question clearly leading),—to which he answered : "He married her against his will. He was forced to marry her." But he says nothing about the alleged threats, or about anything else that occurred to cause Copeland to fear bodily hurt. Hoskins admits that he was not at the marriage, and hence he was not testifying as to facts within his own knowledge, but giving only his understanding of the matter ; and there is nothing to show that Owens was doing anything more. Hence, this evidence wholly fails to sustain the allegation that appellant was forced to enter into this marriage by reason of threats of personal violence. It is true that the evidence shows that appellee remained with her mother from the time of the marriage up to the taking of the testimony, but it nowhere shows that appellant made any effort to get her to live with him, or made any provision for her support. On the contrary, by his own showing, he left her immediately after the marriage took place, and never went where she was again, but that she applied to him for money from time to time, yet he fails to show that he furnished it. Therefore, there appears nothing in the record to

show that the separation complained of is without the fault of the appellant.  There appears to be quite a variance between the statement of appellant, where he represents himself as being without property or home to which to carry his wife, and the statement made at bar by his counsel on his behalf, where they represent him as being "a young man of good standing and considerable means."  We deem it unnecessary to argue further to show that appellant was not entitled to a divorce from appellee on any of the grounds stated in his bill, especially as the evidence, as we have seen, signally fails to support any one of its material allegations.  We are therefore of opinion that the decree complained of was clearly right, and must be affirmed.