JAMES F. SHERMAN, Appellant, v. FAYE H. SHERMAN,
Appellee.

MARRIAGE: Annulment—Duress—Threats of Prosecution for Seduc-
tion. A marriage solemnized under threat of prosecution and
confinement in the penitentiary, even for an exaggerated period
of time, for the actual seduction of the female, will not be
annulled on the plea of duress. And especially is this true where
such marriage is followed by cohabitation, howsoever short, as
husband and wife. (Sec. 4763, Code, 1897.)

*Appeal from Lyon District Court.*—WILLIAM HUTCHINSON,
Judge.

SATURDAY, FEBRUARY 12, 1916.

ACTION to annul and set aside a marriage between plain-
tiff and defendant, which was solemnized at Canton, in the
state of South Dakota. It is alleged that it was entered into
on plaintiff's part through misrepresentation, fraud and
duress. This charge was denied by defendant, and on the
testimony adduced, the trial court dismissed plaintiff's peti-
tion, and he appeals.—*Affirmed.*

*Asa Forrest* and *S. D. Riniker,* for appellant.
*Simon Fisher,* for appellee.

DEEMER, J.—The parties were married in the state of
South Dakota on January 15, 1914, and on April 25th of the
same year, plaintiff, the husband, commenced this action to
annul the marriage on the grounds before
stated. The contracting parties were high
school pupils, each about 19 years of age.
They had "kept company" and corresponded
with each other as lovers usually do for 3
or 4 years before their marriage, the last letter which passed
between them being dated January 4, 1914. They lived in

MARRIAGE: an-
nulment:
duress:
threats of
prosecution
for seduc-
tion.

adjoining towns, but were often in each other's company, and, yielding to their passions, plaintiff finally had intercourse with the girl. When this was discovered by the girl's parents, whose name was Shutt, they took the matter in hand and, getting the sheriff of the county to go with them, they took their daughter to the home of plaintiff's parents, stopping on the way at a schoolhouse at the town of Inwood, where plaintiff was attending school, and taking him to a hotel in said town. At the hotel, plaintiff was taken into the presence of defendant and her mother and there charged by the girl's father with having ruined her and told that he must marry the girl. It is also asserted that he said the sheriff of the county was near at hand and that if he (plaintiff) did not marry the girl, he would be taken back to the county seat. Plaintiff then asked to confer with his father and mother and this permission was granted, and all the party, including the sheriff, went with him. Arriving at his home, defendant's father repeated the story of the daughter's seduction to plaintiff's parents and insisted that he (plaintiff) must marry the girl; and it is averred that he said this must be done, or plaintiff would be sent to the penitentiary for life, or a long term of years. Plaintiff then retired from the room and talked privately with his mother and father about the matter, and while they were absent, it is claimed that the sheriff advised plaintiff's mother that the best thing he (plaintiff) could do was to marry the girl. After plaintiff and his father had consulted over the matter for some time, it is said that the sheriff advised them that they had been out long enough and that they must come back and settle the matter, and, upon their return, the sheriff advised the father that the best thing that could be done was to have plaintiff marry the girl. To this proposition, plaintiff and his parents finally consented, and at the suggestion of someone, it was agreed that the marriage should be performed at Canton in South Dakota, and the entire party agreed to go there for the ceremony. As the plaintiff was under age, it was necessary

that his parents, or one of them, should consent to the marriage, in order to secure the proper license. It is admitted that defendant and her parents represented that she was pregnant as a result of her intercourse with plaintiff, and it is stated in the petition that this was false and untrue, and known to be so when the statement was made, and it is further alleged that plaintiff had committed no crime for which he could be sent to state's prison for life or a long term of years, which the sheriff and all other parties making the statement well knew; and that, by reason of all these statements, which were falsely and fraudulently made, and by reason of the threats made against him, both plaintiff and his parents were induced through duress and against their will to consent to the marriage to defendant, which they would not otherwise have done. The father and mother of both participants went to Canton in South Dakota, which is but a few miles from Inwood, where plaintiff's family resided, with the plaintiff and the defendant, making the journey in two automobiles, and their marriage license was obtained with the consent of one of plaintiff's parents. A minister was called and a ceremonial performed in the hotel at Canton, neither of plaintiff's parents being present. After the marriage, all parties except plaintiff and defendant returned to their respective homes. The newly married couple remained at the hotel over night, occupying the same bed. The next day, they went to the town of Hudson, which is but a short distance from Canton, ostensibly to visit some relatives; but on the afternoon or evening of the same day, they returned to Canton, and plaintiff there left the defendant, saying that he was going to find a place to work. The record does not show whether they lived together after that time or not; but whether they did or not, this action was commenced in April of the same year. There is a sharp conflict in some of the testimony regarding what occurred at various places on the day the marriage ceremony was performed, and in view of the conclusion reached, it is better that we say little about this matter.

For the good of all concerned, it is well that whatever feeling may have been engendered by this most unfortunate controversy be forgotten, and every effort made to induce these young people to remember their marriage vows and to atone for their indiscretion. It is enough to say that the law of this state favors marriage and makes it possible for a young man in the position in which plaintiff placed himself to atone for his wrong by marrying the woman whom he has wronged. Code Sec. 4763. And a marriage for this purpose, although made under fear of prosecution or to avoid the consequences thereof, is not regarded as made under duress, although, save for the fear of prosecution, the parties would not have married. *Armstrong v. Lester,* 43 Iowa 159. This is the rule everywhere prevailing where like statutes are found. See cases hereafter cited. There is no denial by plaintiff anywhere of the claimed seduction, and the only duress or fraud relied upon are certain statements said to have been made by defendant's father and the sheriff, to the effect that, if plaintiff did not marry the girl, he would be prosecuted and sent to the penitentiary for life, or a long term of years. It is denied that these statements were made, although it is conceded that reference was made to a recent case in that county which resulted in the conviction of another young man and his imprisonment in the penitentiary. We will not, for reasons stated, attempt to settle this conflict. It is enough to say that, even if these statements were made and were false in that the extent of punishment for the crime was misrepresented, nevertheless it does not appear that the nature of the punishment—that is, the length of the imprisonment— was the motive which led plaintiff and his parents to give their consent. It was the fact that he might have to undergo imprisonment in the penitentiary as a penalty for his offense which led to the giving of consent. Neither the defendant nor her parents nor the sheriff who went with them misrepresented the defendant's condition; none of them acted maliciously, nor was their action without probable cause.

That they intended to have plaintiff marry the girl or face a prosecution for his prior conduct may be conceded; but this alone will not avoid the marriage. *Marvin v. Marvin,* (Ark.) 12 S. W. 875; *Shoro v. Shoro,* (Vt.) 14 Atl. 177; *Jackson v. Winne,* 7 Wend. (N. Y.) 49; *La Coste v. Guidroz,* (La.) 16 So. 836; *Copeland v. Copeland,* (Va.) 21 S. E. 241. Any other rule would make the statute which permits one accused of seduction to avoid the consequences of a prosecution for that offense contrary to public policy and against good morals. He who advantages himself of such a statute must incur all the burdens which it imposes, and it was not intended that the party should go through an idle ceremony and thus purge himself of a wrong not only to an individual, but the state itself. Its manifest object was to legitimatize issue born, secure their future support and make it possible for the guilty party to rectify his wrong. That fear of prosecution or conviction of an offense was the impending motive is no reason for invalidating the marriage. In ninety-nine cases out of a hundred, such marriages are induced by fear. And if the charge is not falsely and maliciously made and without probable cause, it cannot be said that the marriage, in a legal sense, was under duress. Moreover, it appears from the record that after the marriage ceremony, the parties thereto were left alone together, that they cohabited as man and wife during the night, and that plaintiff did not leave the defendant until the next day. He then left, not because his will had been overcome, but, as he said, to find work; and until this suit was brought, he never claimed that he did not voluntarily consent, not only to the marriage, but to a consummation thereof by cohabitation. Under the well-established rule, he is in no position to say that the marriage was void for either fraud or duress. *Schwartz v. Schwartz,* 29 Ill. App. 516.

The reason for this is that consummation under such circumstances is regarded as strong, if not conclusive, testimony that the man intended to assume the marriage relation,

and not simply to go through an idle ceremony, or one in which he took part by reason of threats of prosecution, or because he was put in fear and acted under duress. *Leavitt v. Leavitt*, 13 Mich. 452; *Hampstead v. Plaistow*, 49 N. H. 84; *Scott v. Shufeldt*, 5 Paige (N. Y.) 43. It may be said, in closing, that courts do not look with favor upon such actions as this. As said by the court in the *Jackson* case, *supra*, "To nullify on such slight grounds so solemn a contract as that of marriage would jeopardize in too many instances the blessings which spring from the dearest civil and social relation." If the parents of these parties will endeavor to induce their children to regard their marital obligations with as much sanctity and solemnity as they have their own, and use all their efforts to have them forget the past, there seems to be no valid reason why they may not re-establish their affections and live happily together. The edict of the law is that they must make the effort. The decree seems to be right, and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.