WINNER, Appellant, vs. WINNER, Respondent.

*April 7—May 4, 1920.*

*Marriage: Annulment for fraudulent representations as to pregnancy.*

The marriage of the plaintiff to the defendant, induced by the representation of the defendant that her pregnancy was due to intercourse with him, will be annulled when the pregnancy was in fact due to intercourse with another man.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action to annul a marriage on the ground of fraud. There is no dispute about the facts. About the 23d or 24th of October, 1918, plaintiff, twenty-seven years of age, had sexual intercourse with the defendant, eighteen years of age. At that time they were engaged and intended to be married the following July. Later defendant advised him she was pregnant as the result of the intercourse with him, and plaintiff, relying upon such statement, married her February 6, 1919. Five months and fourteen days from plaintiff's first intercourse with defendant, and on April 7, 1917, she gave birth to a fully developed full-term child. Plaintiff was in the army and had no access to defendant until a few days prior to their first intercourse and the trial court found that plaintiff was not the father of defendant's child. After the birth of the child the plaintiff refused to cohabit with defendant or to support her, and sent her and the child back to her parents.

The trial court held that plaintiff was not entitled to an annulment of the marriage, and from a judgment entered accordingly he appealed.

For the appellant there was a brief by *G. M. & H. M. Perry* of Black River Falls, and oral argument by *H. M. Perry.*

*L. Olson Ellis* of Black River Falls, for the respondent.

VINJE, J.    It-appears from the evidence that plaintiff and defendant first became acquainted in July, 1917, engaged in August, 1918, and expected to be married in July, 1919. On the 16th day of October, 1918, plaintiff returned home from army service to attend his brother's funeral, and it was during his stay of a couple of weeks at home that he had intercourse with the defendant, he claims at her solicitation or advances, and she practically admits that. Both parties had been residents of Jackson county since birth, but whether near neighbors or not does not appear.

The trial court was of the opinion that under the rule of *Varney v. Varney,* 52 Wis. 120, 8 N. W. 739, and foreign cases hereinafter referred to, plaintiff was not entitled to a decree of annulment of the marriage and dismissed the complaint upon the merits.    Its conclusion of law was "that as plaintiff was criminally intimate with the defendant before marriage he does not come into court with clean hands, and the court will not grant the relief prayed for because of such unlawful sexual intercourse."

Sec. 2351, Stats. 1919, provides that

"A marriage may be annulled for any of the following causes existing at the time of marriage: . . .

"(4) Fraud, force, or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party."

So we have the question presented whether the marriage should be annulled because of the fraud of the defendant in concealing the fact that her pregnancy was by another man than plaintiff and in assuring him and causing him to believe that he was the cause thereof. No court, so far as our examination of cases has gone, has denied relief on the ground that plaintiff has not come into court with clean hands because of his illicit intercourse with defendant before marriage, except the New Jersey court in *Seilheimer v. Seilheimer,* 40 N. J. Eq. 412, 2 Atl. 376, which bases its

decision partly on that ground and partly on the ground of the confirmation after the marriage and after the discovery of the fraud. Such intercourse is a mere misdemeanor, and as to that both parties are usually equally blamable. In this case the defendant certainly as much as the plaintiff, because she admits she invited it. But the illicit intercourse is not the gravamen of the action. The prior pregnancy and the concealment thereof constitute the gist of the complaint, and as to those acts the injured plaintiff is wholly innocent. So it is not a case where the parties are *in pari delicto* and must be refused relief on that ground. Neither complains of the illicit intercourse between them. And his sharing therein ought not to render him a judicial outcast to the extent of denying him relief from one of the worst frauds that can be imposed upon any one.

Where relief has been denied in such cases, meaning cases where the woman has had illicit intercourse with her husband before marriage, but without his knowledge has been pregnant by another man at the time of her marriage, it has been on the ground that by reason of his illicit intercourse with the woman before marriage plaintiff has been apprised of her easy virtue and he has been put upon inquiry relative thereto, and failing to make such inquiry he has been held negligent and has foreclosed himself from saying that he believed her representations that he was the cause of the pregnancy. Such was the case in *Foss v. Foss,* 12 Allen (Mass.) 26,—the case that has led to the denial of relief in many cases where the facts were quite different and which later cases would probably have been differently decided had the relation between the facts and the ground of the decision in the *Foss Case* been clearly perceived. It is there stated that

"After a very brief acquaintance with the defendant, during which he had visited her only two or three times, he had carnal knowledge of her person; that this took place between

two and three months prior to the solemnization of the marriage; that he well knew before the execution of the contract by the marriage that she was pregnant with child, but was told by her that she was with child by him, and that he did not know or suspect that she had had sexual intercourse with any other man." Page 29.

The court there says:

"The difficulty is not that adequate cause for a decree of nullity is not set forth in the libel, but that the evidence entirely fails to support the essential allegations on which a sentence annulling the marriage for the cause set forth must be based." Page 27.

The failure of proof consisted in failing to satisfy the court, under the facts in that case, that plaintiff had a right to rely upon representations of defendant that she was with child by him. The facts in that case were that he had known her but a short time; that at their second or third meeting he had sexual intercourse with her. It does not appear that they were engaged when the intercourse took place. Under such a state of facts the court might well reach the conclusion that he ought not to rely upon her statements that she was pregnant by him. But in the case at bar the parties had known each other for years, were engaged to be married, and had set the month of the marriage date. To say that under such circumstances the man has no right to rely upon the woman's statements that he is the father of the child she is bearing, and that he must make inquiry elsewhere as to her chastity, is to negative all virtue, all truthfulness, and all decency in every woman that may have been imprudent enough to anticipate with her lover the rights of the marriage relation. Such a lapse from good morals should not be held destructive of every ethical instinct of the woman and render her unworthy of belief as to assertions fraught with such serious import, and whose truth she alone knows. It does not follow that because a woman has consented to, or even invited, illicit relations

with her lover, whom she shortly expects to marry, that she has in the past been guilty of like conduct with others. Our faith in womanhood leads us to the conclusion that the former does not necessarily or generally imply the latter. Nor does such delinquency destroy integrity of character to the extent that truthfulness necessarily goes with it. Plaintiff had a right to rely upon the representations made to him by the defendant that he was the father of the child. Besides, what inquiry could a decent, honorable man make under such circumstances? The Massachusetts court suggests three lines of conduct: first, inquiry in the neighborhood where the woman lives; second, a medical examination; or third, waiting till the birth of the child to ascertain the fact of paternity. We respectfully suggest that neither line of conduct befits an honorable man and would not be resorted to by the average man. To do so would be at once to besmirch the reputation of the woman he intended to marry. He would conclusively prove his unbelief in her veracity; he would show to others that he had no faith in her chastity and would blacken her reputation as to that in the eyes of all to whom inquiries were directed; and, if he awaited the birth of the child, he might bastardize his own offspring and bring added disgrace to himself and wife. No right-minded man guilty of having wronged a woman or sharing a wrong with her would so act. He would do as plaintiff did in this case—marry her. That is the only honorable reparation possible—the only method of legitimatizing the offspring which he believes to be his and of saving the honor of the woman he has promised to marry. The act of marriage in such a case is not the result of negligent credulity, but of honorable motives to repair as far as possible wrongs inflicted or shared by him. Such conduct should be encouraged to the end that lesser wrongs be remedied instead of being followed by greater ones.

On the other hand, the concealment by the woman of the paternity of her child is a fault so grievous that there is no

excuse or palliation for it.    By the fraud she foists upon her husband a spurious offspring which he must acknowledge as his knowing it not to be.    He must nurture and maintain it and invest it with all the rights of legitimate children, including that of inheritance.    Such a fraud is vital and goes to the essentials of the marriage relation.    It is true, as stated in *Varney v. Varney,* 52 Wis. 120, 8 N. W. 739, that a man may be compelled to accept an unchaste wife, on the ground that there is no warranty as to health, wealth, temper, character, or previous chastity, but that does not go to the extent of holding that a husband must accept spurious issue.    The marriage contract implies that the woman is in present condition to bear her husband children, at least so far as she knows.    In such a case as we have she knows she cannot till the spurious issue is born.    It has been held that a spouse infected before marriage with a venereal disease commits such a fraud upon the other who is not aware of it as to warrant an annulment of the marriage.    *C—— v. C——,* 158 Wis. 301, 305, 148 N. W. 865. The carrying and the concealment of a spurious issue must be considered at least an equal fraud.    The opportunity of a designing pregnant woman to choose her husband willy-nilly need only be mentioned to be appreciated if no relief is to be had from conduct such as defendant was guilty of in this case.    If she is successful in seducing a man whom she desires to become the putative father of her bastard child, she can practically compel him to become such, especially if he be endowed with the instincts of true manhood.

An examination of some of the cases bearing upon the question for determination will disclose in most of them material facts different from those before us.    Thus, in *Varney v. Varney,* 52 Wis. 120, 8 N. W. 739, the woman had given birth to a child which was dead before marriage. In *Sylvester v. Sylvester,* 180 Mich. 512, 147 N. W. 454, the court could not agree upon the material facts; but whatever they were as to illicit intercourse between the parties

Winner v. Winner, 171 Wis. 413.

before marriage, there was no question of the support of a spurious issue owing to the wife's miscarriage. The case of *Gard v. Gard* (Mich.) 169 N. W. 908, has settled the doctrine in that state in favor of annulment under the facts such as in the case at bar. In *Bryant v. Bryant,* 171 N. C. 746, 88 S. E. 147, L. R. A. 1916E, 648, defendant induced plaintiff to marry her by claiming she was pregnant by him when she was not pregnant at all, and annulment was denied. The same state of facts was present in *Fairchild v. Fairchild,* 43 N. J. Eq. 473, 11 Atl. 426, and the court refused to annul the marriage. In *Di Lorenzo v. Di Lorenzo,* 174 N. Y. 467, 67 N. E. 63, 63 L. R. A. 92, defendant claimed she had given birth to a child of which plaintiff was the father, during his absence from the state, and exhibited to him a child which was neither his nor hers. Annulment granted. In Iowa a statute provided that if a woman was pregnant by another without the knowledge of the man she marries, he is entitled to annulment of the marriage upon discovery of the fact. Held, the fact that he had illicit intercourse with her before marriage did not debar him from the benefit of the statute. *Wallace v. Wallace,* 137 Iowa, 37, 114 N. W. 527, 14 L. R. A. N. s. 544. The Massachusetts court has steadfastly adhered to the ruling and the ground thereof stated in *Foss v. Foss,* 12 Allen (Mass.) 26. See *Crehore v. Crehore,* 97 Mass. 330, and *Safford v. Safford,* 224 Mass. 392, 113 N. E. 181. For valuable notes on this subject see 18 L. R. A. 375 and L. R. A. 1916E, 650.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant the divorce as prayed for in the complaint.