MANUELA DE MORA BRANDT v. EDWARD FREDERICK BRANDT.

167 So. 524.
Division B.
Opinion Filed April 11, 1936.

*T. Rogero Mickler, Bertram C. Mickler* and *Mickler & Mickler,* for Appellant;

*Dunham & Meitin, MacWilliams & Upchurch* and *Frank D. Upchurch,* for Appellee.

BUFORD, J.—The appeal brings for review a final decree annulling a marriage upon the ground, in short, that the defendant, wife, had caused the complainant, husband, to marry the defendant by falsely stating and pretending at the time that she was pregnant with child by the complainant, when in truth and in fact she was not pregnant at that time.

The record is voluminous but, at most, it shows that complainant and defendant had been intimately acquainted with one another for a long period of time prior to their marriage; that each was more or less infatuated with the other; that they were both people of education and experience, having both traveled and studied literary courses; that the man was at the time a law student at the University of Florida; that the young woman held a position as instructor in another university after coming to the United States from Spain, of which country she was a native; that upon several occasions within a few weeks prior to the marriage they had, by mutual agreement, indulged in sexual intercourse each with the other. The uncontradicted testimony is that from the Sunday they were married until the following Thursday they lived in the husband's house. The wife testified that they indulged in sexual intercourse each evening. Under all the circumstances, this testimony bears the earmark of truth. The husband presented the wife to Dean Trusler, newspaper men and others of the public, as

his wife, during these days after the marriage. The evidence is ample of a completely consummated marriage.

As we see it, the only question involved is whether or not a false representation made by a woman to a man with whom she has had sexual intercourse that she is pregnant by him and thereby he is persuaded to marry her, is a sufficient ground to warrant the annulment of the marriage.

The authorities are not all one way. Some courts have held that such facts will warrant the annulment, but we fail to find in those decisions what we consider logical reasoning for such conclusion. Under such conditions, it cannot be logically said that the man marries the woman because he desires to marry a woman who is pregnant, but the real reason for such marriage is more logically the fact that he knows he is at least in part responsible for the conduct which might have brought about the alleged condition.

In the case of Arno v. Arno, 265 Mass. 283, 163 N. E. 861, it is held:

"A man who had married a woman upon her demand after he had had sexual intercourse with her, cannot maintain a libel for nullity of the marriage, although he was led to marry her because he was grossly deceived by deliberate false representations on her part that she was with child by him, which he believed after having an examination of their truth made; and although at a hearing of the libel nothing appears to indicate that he would have married her had he not relied upon what was told to him and to those whom he called to assist him in verifying the truth of the representations."

This case followed the enunciation previously promulgated in Crehore v. Crehore, 97 Mass. 3320. This holding was followed in the case of Donovan v. Donovan, 263 N.

Y. Supp. 336. In that case the Court, speaking through the official referee, said:

"The course traveled by the plaintiff leads him far afield from the path which a devotee of the stern dame equity is required to follow as a necessary preliminary to receiving absolution at her shrine.

"When the plaintiff was accused, as he alleges, of being the father of an unborn child, if he was innocent he was called upon by every dictate of self-respect to deny the charge and, if guilty, he should not be relieved from the subsequent solemn contract of marriage because the prospective mother did not give birth to a child."

And further, in the same case, it was said:

"To allow an annulment upon the facts in the instant case would open up a new field for people inclined to throw off the relation and responsibility of a sacred contract upon which the basis of our society rests."

With these statements we concur.

For the reasons stated, the decree is reversed and the cause remanded with directions that the bill of complaint be dismissed.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., concurs in the conclusion, dissents as to the opinion.

DAVIS, J. (concurring specially in the conclusion).—I think the Circuit Court's decree may be reversed because of the proven cohabitation of the appellant subsequent to the marriage that in effect ratified it, but not upon any of the considerations expressed in the opinion. *In pari delicto melior defendentis est* may be applied to most of such situations.

If I understand the opinion correctly, it means in practical application that an unconsummated ceremonial marriage induced by false representations of pregnancy and threats to commit suicide, is not voidable at the instance of the deceived husband, even where, as there is in this case, substantial evidence tending to show that the female in the case was actuated in perpetrating the fraud complained of upon the appellant, because of the fact that she, being a citizen of Spain, was desirous of procuring an American husband in order to enable her to remain in the United States as the wife of an American citizen, a thing she could not do unless she brought about a marriage with appellee by playing upon his obvious desire to "do the right thing" by her, a woman of mature age and advanced education, who knew that because of appellant's sense of honor, she could falsely and fraudulently induce appellant to believe that, through pregnancy by him, she held moral claim upon him entitling her to some consideration at his hands because of mutually indulged sexual experience that were not only permitted, but co-operatively arranged for by the complaining female under circumstances that fall far short of commending favorable consideration to her position in a court of equity and good conscience.

It seems to me that insofar as the alleged marriage is concerned, we must deal with it and consider in its contractual aspect only if, in fact, it was never consummated (except in advance of the marriage ceremony) and therefore has never ripened into that sublime social status of matrimony that, once deliberately entered upon, becomes, from and after consummation, a favorite of the law in order to preserve it for the benefit of society in general.

But fornication as a prelude and inducement to simplified naturalization of a foreign born female into American

citizenship through a marriage fraudulently contrived to be realized in consideration thereof, should not be given the benevolent approval of a court of equity, especially when the authorities are against it in principle. See: 18 R. C L. 446, and cases cited.

In this case the woman was 34 years of age and the husband 32 years. The woman came to the United States on business. She was at one time employed as Spanish instructress in the University of Wisconsin and there is no suggestion in the evidence that she was in anywise the victim of seduction on the part of the husband who was, at the time of much that happened, a law student in the University of Florida. The least that can be said is that the parties carried on a joint adventure in sexual indulgence for their own satisfaction and with full knowledge on the part of each that consequences of such a libidinous affair were likely to be physical, as well as moral, depreciation in the circumstances.

I think the following quotation from the well considered case of Di Lorenzo v. Di Lorenzo, 174 N. Y. 467, 67 N. E. Rep. 63, 63 L. R. A. 92, correctly states the applicable law.

"In this case the representation of the defendant was as to a fact, except for the truth of which the necessary consent of the plaintiff would not have been obtained to the marriage. It was designed to create a state of mind in the plaintiff, the operation of which would be to yield a consent to marry the defendant in the belief that he was rectifying a great wrong. The minds of the parties did not meet upon a common basis of operation. The artifice was such as to deceive a reasonably prudent person, and to appeal to his sense of honor and of duty. The plaintiff had a right to rely upon the defendant's statement of a fact, the truth

of which was known to her and unknown to him, and he was under no obligation to verify a statement to the truth of which she had pledged herself. It was a gross fraud, and, upon reason, as upon authority, I think it afforded a sufficient ground for a decree annulling the marriage contract. The jurisdiction of a court of equity to annul a marriage for fraud in obtaining it was early asserted in this State by the court of chancery, at a time when the limited powers of courts of law were inadequate for the purpose. This jurisdiction was expressly rested upon the general power to vacate contracts in all cases where they had been procured by fraud. From this general jurisdiction of equity a contract of marriage was not regarded as being excepted when the assent to it was the result of artifice or of gross fraud. See Ferlat v. Gojon, Hopk. Ch. 478, 14 Am. Dec. 554; Burtis v. Burtis, Hopk. Ch. 557, 14 Am. Dec. 563. If, as it was observed by Chancellor Sanford in Ferlat v. Gojon, Hopk. Ch. 478, 14 Am. Dec. 554, no instance of the exercise of this jurisdiction was to be found in England, it was because the ecclesiastical or spiritual courts had cognizance of matrimonial causes; but he said 'the jurisdiction of equity in cases of fraudulent contracts seems sufficiently comprehensive to include the contract of marriage.' "

So I concur in the conclusion only.