MASTERS, Appellant, v. MASTERS, Respondent.

*March 9—April 4, 1961.*

For the appellant there was a brief and oral argument by *Lester H. Gunsburg* of Milwaukee.

For the respondent the cause was submitted on the brief of *Joseph M. Syman,* first assistant family court commissioner, Milwaukee county.

CURRIE, J. The controlling statute in the instant action for annulment of marriage is sec. 247.02, Stats., which reads in part as follows:

"No marriage shall be annulled or held void except pursuant to judicial proceedings. A marriage may be annulled for any of the following causes existing at the time of the marriage: . . .

"(4) Fraud, force, or coercion, at the suit of the innocent and injured party, unless the marriage has been confirmed by the acts of the injured party."

Fraud has been the ground for annulment of marriage almost from the inception of the state in 1848 as evidenced by the fact that sec. 247.02, Stats., had its origin in ch. 79, sec. 2, R. S. 1849, which provided:

"When either of the parties to a marriage, for want of age or understanding, shall be incapable of assenting thereto, or when the consent of either party shall have been obtained by force or fraud, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be void from the time its nullity shall be declared by a court of competent authority."

The Wisconsin case closest in point from the standpoint of the factual situation is *Winner v. Winner* (1920), 171 Wis. 413, 177 N. W. 680, 11 A. L. R. 919. In that case the parties had illicit intercourse and the defendant falsely represented to the plaintiff that she was pregnant and that he was the cause thereof. The plaintiff believed such representation and by reason thereof married the defendant. Five months and fourteen days from the first act of intercourse between the parties the defendant gave birth to a fully de-

veloped, full-term child, thus establishing the falsity of her representation that the plaintiff was the cause of her pregnancy. The plaintiff upon the birth of such child refused to cohabit further with the defendant and thereafter commenced an action to have the marriage annulled. The trial court refused to grant the annulment, but upon appeal this court reversed and held that the plaintiff was entitled to an annulment.[1]

In the opinion in the *Winner Case* there was cited the case of *Di Lorenzo v. Di Lorenzo* (1903), 174 N. Y. 467, 67 N. E. 63, 63 L. R. A. 92. As in the instant case, the false representations in the *Di Lorenzo Case,* which had induced the plaintiff husband to marry the defendant, were that she was pregnant by reason of having had illicit intercourse with him, when in fact she was not pregnant. The New York court granted an annulment of the marriage, and we quote from the opinion by Mr. Judge GRAY as follows (174 N. Y. 467, 472, 67 N. E. 63, 64):

"In this case, the representation of the defendant was as to a fact, except for the truth of which the necessary consent of the plaintiff would not have been obtained to the marriage. It was designed to create a state of mind in the plaintiff, the operation of which would be to yield a consent to marry the defendant, in the belief that he was rectifying a great wrong. The minds of the parties did not meet upon a common basis of operation. The artifice was such as to deceive a reasonably prudent person and to appeal to his sense of honor and of duty. The plaintiff had a right to rely upon the defendant's statement of a fact, the truth of which was known to her and unknown to him, and he was under no obligation to verify a statement, to the truth of which she had pledged

---

[1] The mandate reversed and remanded with directions "to grant the divorce as prayed for in the complaint." The reference to divorce in the mandate apparently was due to inadvertent mistake as the cause of action pleaded in the complaint was one for annulment and not divorce.

herself. It was a gross fraud and, upon reason, as upon authority, I think it afforded a sufficient ground for a decree annulling the marriage contract."

There is a fairly even division in authorities as to whether a false representation by the defendant woman that she is pregnant by the plaintiff man, when actually she is pregnant by another, is sufficient to support a cause of action for annulment of marriage.[2] However, in fact situations in which the woman's false representation is that she is pregnant by the man whom she induces thereby to marry her, when in fact she is not pregnant, the New York courts stand alone in granting an annulment of the marriage.[3] Nevertheless, New York courts continue to adhere to the doctrine of the *Di Lorenzo Case* and to apply the same to fact situations similar to the one presented by the instant appeal. *Garfinkel v. Garfinkel* (1959), 9 App. Div. (2d) 98, 191 N. Y. Supp. (2d) 574.

We have carefully reviewed the cases from other jurisdictions, which have denied annulment to husbands victimized by the same type of fraud as was perpetrated upon the instant plaintiff by the defendant, to ascertain the reasons advanced in support of such a determination. There appear to be two such reasons. One is that, because the parties indulged in illicit intercourse before marriage, the parties stand *in pari delicto* so that the defendant comes into court with "unclean hands." The second is that the false representa-

---

[2] 3 Nelson, Divorce and Annulment (2d ed.), pp. 324, 325, sec. 31.40; 35 Am. Jur., Marriage, pp. 264, 265, sec. 139; 55 C. J. S., Marriage, p. 873, sec. 34 (3) (g).

[3] Cases denying annulment in such a factual situation are: *Mobley v. Mobley* (1943), 245 Ala. 90, 16 So. (2d) 5; *Gondouin v. Gondouin* (1910), 14 Cal. App. 285, 111 Pac. 756; *Brandt v. Brandt* (1936), 123 Fla. 680, 167 So. 524 (one justice dissented and cited *Di Lorenzo v. Di Lorenzo, supra*); *Helfrick v. Helfrick* (1927), 246 Ill. App. 294; *Rhoades v. Rhoades* (1950), 10 N. J. Super. 432, 77 Atl. (2d) 273.

tion was not material, which is the view adopted by the trial court in the case at bar.

The argument that the parties stand *in pari delicto* was advanced by the defendant wife in *Winner v. Winner, supra,* and was rejected by this court. With respect to such contention the opinion pointed out that such intercourse constituted a mere misdemeanor. We are of the opinion that the punishment inflicted by denying an annulment · in cases of this kind is out of all proportion to the offense committed. In so holding, we do not condone in the least the plaintiff's infraction of the moral code. Furthermore, by refusing an annulment, the plaintiff would not be punished for the illicit intercourse, but rather for his laudable conduct in seeking to rectify a wrong he believed would result unless he did marry the defendant. There may be aggravated situations in which the doctrine of *in pari delicto* ought to be applied, such as was present in *Gondouin v. Gondouin* (1910), 14 Cal. App. 285, 111 Pac. 756, in which the man induced the woman to submit to intercourse by his promise to marry her. This is not such a case.

Whether to apply the doctrine of *in pari delicto* poses a question of public policy. The lone justification which we can perceive for here invoking such doctrine is that it might act as a future deterrent to unmarried persons engaging in illicit intercourse. If the thought of the unpleasant consequences, which are likely to befall the male participant should pregnancy result, or the fear of a criminal prosecution for fornication, are insufficient to deter him, we doubt very much that the example which would be afforded by denying an annulment in the instant fact situation would be any more effective. On the other hand, to deny an annulment would reward the defendant for a palpable fraud and punish the plaintiff for being victimized thereby in an effort on his part to right a wrong, which he was induced by the fraud to think would result if he did not marry the de-

fendant. When the competing policy factors are so weighed, the scales of justice tip in but one direction. Therefore, we refuse here to apply the principle of *in pari delicto*.

The reason why some courts have held that fraudulent representations of the character of those perpetrated by the instant defendant are not material is well stated in *Helfrick v. Helfrick* (1927), 246 Ill. App. 294, 295, as follows:

"The fraudulent representations for which a marriage may be annulled must be of something essential to the marriage relation—of something making impossible the performance of the duties and obligations of that relation, or rendering its assumption and continuance dangerous to health or life."

In *Varney v. Varney* (1881), 52 Wis. 120, 8 N. W. 739, a wife sued for divorce, and the husband counterclaimed for an annulment. The allegations of the counterclaim were that the wife prior to marriage had fraudulently represented that she was a chaste and virtuous woman, and had fraudulently concealed the fact that she had given birth to an illegitimate child which had subsequently died. This court held that such allegations were not sufficient to state a cause of action for annulment and quoted with approval the following statements by the Massachusetts court made in *Reynolds v. Reynolds* (1862), 85 Mass. (3 Allen) 605, 607:

"While, however, marriage by our law is regarded as a purely civil contract, which may well be avoided and set aside on the ground of fraud, it is not to be supposed that every error or mistake into which a person may fall concerning the character or qualities of a wife or husband, although occasioned by disingenuous or even false statements or practices, will afford sufficient reason for annulling an executed contract of marriage. In the absence of force or duress, and where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circum-

stances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. Therefore no misconception as to the character, fortune, health, or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice."

It is arguable that this court in *Varney v. Varney, supra,* by its approval of the foregoing quotation, adopted the same test of materiality as stated by the Illinois court in *Helfrick v. Helfrick, supra.* However, while a false representation, that one is pregnant when she is not, might be classified as a representation with respect to health, it extends far beyond that. This is because such a false representation is not calculated to impress the man involved with the desirability of the woman as a wife, as an inducement to marriage, but to cause him to enter into a marriage against his will in an attempt to right a wrong and legitimatize the supposed unborn child.

Sec. 247.02 (4), Stats., contains no limitation that would restrict its application to only those cases of fraud which make impossible the performance of the duties and obligations of marriage, or renders marriage dangerous to health or life. In the absence of such a legislative command, we do not deem it advisable that we adopt such a restrictive interpretation of the statute and thus tie the hands of this court so as to prevent it from annulling a marriage in such an aggravated case of fraud as this record presents.

The decisions of this court in *Varney v. Varney, supra,* and *Wells v. Talham* (1923), 180 Wis. 654, 194 N. W. 36, 33 A. L. R. 827, make it plain that a much-stricter rule is followed in annulling marriages for fraud than is followed in rescinding ordinary contracts. In *Wells v. Talham, supra,* the court declared (p. 662):

"It will be seen from the decisions that this court early adopted the view, which has been adhered to, that, although

marriage is purely a civil contract, false representations which would set aside ordinary civil contracts are not necessarily sufficient to void the contract of marriage. This policy depends not alone on the vital importance of the dissolution of the marriage relation to the parties directly concerned. It rests on the deep concern of the state that the integrity of the marriage contract shall, so far as possible, be preserved. This is shown by the careful provision of our statute regulating marriage and divorce, including the statute providing for the appointment of divorce counsel in each county to represent the public, whose duty it is to appear and investigate the merits in such actions for the prevention of collusion, fraud, and imposition upon the court."

Because of these considerations courts should be hesitant to annul marriages on the ground of fraud perpetrated upon one of the parties by the other, unless thoroughly convinced that the defrauded party would not have entered into the marriage contract except for such fraud. In the instant case the trial court has found that, had the defendant's fraudulent representations not been made, the plaintiff would not have married the defendant. We deem the character of such false representations to be such as to be material as a matter of law, if they in fact caused the marriage to be entered into under circumstances that no marriage would have taken place absent such false representations. Therefore, the plaintiff is entitled to a decree annulling the marriage.

We deem it advisable to point out that there may be situations of marriages induced by material fraudulent representations in which an annulment should be denied for policy reasons. An illustration of this would be a false representation of financial worth. In so far as the instant case is concerned, we have hereinbefore reviewed the policy factors, in passing on the application of the doctrine of *in pari delicto,* and have concluded that the annulment should not be denied for reasons of policy.

The plaintiff's brief questions the right of the family court commissioner of Milwaukee county to appear in this appeal and to file a brief. The instant action was tried as a default matter in the circuit court, and no order was entered pursuant to sec. 247.15 (2), Stats., dispensing with the presence of the family court commissioner. Because of this we deem it was proper for such family court commissioner to appear in behalf of the public in this appeal and to file a brief herein. The public has a deep interest in any action affecting the voiding or dissolving of a marriage. *Wells v. Talham, supra,* and *Subacz v. Subacz* (1924), 183 Wis. 427, 433, 434, 198 N. W. 372. The powers of family court commissioners should be liberally construed to the end that such public interest is properly protected.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter a judgment annulling the marriage of the parties.