**John PARKS, Appellant,**

v.

**Rhea Mynatt PARKS, Appellee.**

Court of Appeals of Kentucky.

Sept. 22, 1967.

Donald D. Harkins, Begley & Harkins, Danville, for appellant.

No counsel for appellee.

CULLEN, Commissioner.

In this action John Parks sought annulment of his marriage to Rhea Mynatt Parks. The relief was denied and John has appealed.

Our statute, KRS 402.030, authorizes a court having equity jurisdiction to "declare void any marriage obtained by * * * fraud." John alleged fraud in that Rhea falsely represented to him that she was pregnant. His undisputed testimony was that as a college student he became a boarder in the home of Rhea's mother; at Rhea's invitation he spent a weekend with her at Myrtle Beach, where they commenced having sexual relations on a basis of mutual desire; thereafter for a period of almost a year they engaged in sexual intercourse at frequent intervals at Rhea's home; she then asserted she was pregnant and threatened him with expulsion from college and with punitive civil and criminal action if he would not marry her. John married her and after they had lived together for only a week he discovered that she was not pregnant and she then admitted that she never had any reasonable cause to believe she was pregnant, that she had represented she was pregnant for the sole purpose of inducing John to marry her. John thereupon left Rhea.

As shown by the annotation in 15 A.L.R. 2d at pages 726 to 728, and by the text in 4 Am.Jur.2d, Annulment of Marriage, sec. 41, pp. 467, 468, a number of states have

held that a false representation of pregnancy upon which the husband was induced to marry is not a ground for annulment. The circuit court in the instant case adopted that view. The reasoning of the cases taking that view seems to involve a mixture of two concepts, one being that since premarital sexual intercourse is illegal the man who engages in it, being in pari delicto, may not complain to the courts of any misconduct of the woman growing out of it, and the other being that any single man who engages in sexual intercourse with a single woman owes a social obligation to marry her.

We are not convinced that the reasoning of those cases is sound. Since the claimed social obligation to marry arising from mutually voluntary sexual intercourse is nowhere considered a basis for any affirmative legal relief, we do not see how or why it should furnish a justification for fraud. As concerns the pari delicto theory we do not believe that the pari delicto doctrine contemplates that the fact that two persons have engaged in an illegal act will forever preclude each from obtaining any equitable relief from fraud of the other simply because the fraud was made possible by reason of the illegal act. The courts should weigh the substance of the right asserted by the plaintiff against the transgression claimed to foreclose it. 27 Am.Jur.2d, Equity, sec. 141, p. 677.

The Supreme Court of Wisconsin has approved the granting of annulment in circumstances such as here presented. See Masters v. Masters, 13 Wis.2d 332, 108 N.W.2d 674. In accord is New York. See Di Lorenzo v. Di Lorenzo, 174 N.Y. 467, 67 N.E. 63, 63 L.R.A. 92. We concur in the following reasoning of the Wisconsin Court in the Masters case (108 N.W.2d at 677, 678):

"The argument that the parties stand in pari delicto was advanced by the defendant wife in Winner v. Winner, supra, and was rejected by this court. With respect to such contention the opinion pointed out that such intercourse constituted a mere misdemeanor. We are of the opinion that the punishment inflicted by denying an annulment in cases of this kind is out of all proportion to the offense committed. In so holding, we do not condone in the least the plaintiff's infraction of the moral code. Furthermore, by refusing an annulment the plaintiff would not be punished for the illicit intercourse, but rather for his laudable conduct in seeking to rectify a wrong he believed would result unless he did marry the defendant. There may be aggravated situations in which the doctrine of in pari delicto ought to be applied, such as was present in Gondouin v. Gondouin, 1910, 14 Cal.App. 285, 111 P. 756, in which the man induced the woman to submit to intercourse by his promise to marry her. This is not such a case.

"Whether to apply the doctrine of in pari delicto poses a question of public policy. The lone justification which we can perceive for here invoking such doctrine is that it might act as a future deterrent to unmarried persons engaging in illicit intercourse. If the thought of the unpleasant consequences, which are likely to befall the male participant should pregnancy result, or the fear of a criminal prosecution for fornication, are insufficient to deter him, we doubt very much that the example which would be afforded by denying an annulment in the instant fact situation would be any more effective. On the other hand, to deny an annulment would reward the defendant for a palpable fraud and punish the plaintiff for being victimized thereby in an effort on his part to right a wrong, which he was induced by the fraud to think would result if he did not marry the defendant. When the competing policy factors are so weighed, the scales of justice tip in but one direction. Therefore, we refuse here to apply the principle of in pari delicto."

The pleadings and proof in this case show a clear case of fraud, accompanied with some coercion. It is our opinion that in these circumstances the plaintiff is entitled to an annulment.

The judgment is reversed with directions for the entry of judgment in conformity with this opinion.

All concur except OSBORNE, J., who dissents.

## CONCURRING OPINION

PALMORE, Judge.

I agree with the viewpoint expressed in the dissenting opinion to the extent that a false claim of pregnancy should not be grounds for an annulment if it was made honestly. As I understand this case, however, the evidence demands a finding that the appellee's claim of pregnancy was fraudulent—that is, known by her to be untrue at the time she made it. On that basis I concur in the majority opinion.

## DISSENTING OPINION

OSBORNE, Judge.

I see no fraud here. Appellant and appellee were having sexual intercourse on a regular and frequent basis. Appellee thought she was pregnant and went to a doctor who confirmed her fears. She then confronted appellant with this fact and he agreed to marry her. After the parties were married they lived together for some time as man and wife in another state prior to appellant leaving and returning to his home in Kentucky. It was while they were living together as man and wife that it was discovered that appellee was not pregnant.

The only question before this court is: Is a false claim of pregnancy sufficient grounds for the annulment of a marriage? The majority rule is that it is not. See Nelson, Divorce and Annulment, 31.40, wherein the rule is stated to be:

"Misrepresentations with respect to the existing pregnancy of a woman who has had premarital intercourse with her husband fall into two categories: (1) That she was pregnant as a result of such intercourse though in fact she was not pregnant, and (2) that she was pregnant as the result of intercourse with her husband though in fact she was pregnant by another man.

"Generally, where the parties have had illicit intercourse, their marriage will not be annulled because the woman falsely represented that she was pregnant, and thereby induced or persuaded the man to marry her. Clearly, ground for annulment is not established where she falsely claimed to be pregnant three or four days after their first act of intercourse and threatened to commit suicide unless he married her. Nor will the marriage be annulled where he continued to cohabit with her after discovering that she was not pregnant."

Madden states the rule as follows:

"If the man is induced to marry the woman by her false representation that she is pregnant by him, when in fact she is not pregnant at all, the fraud is not ground for annulment." Madden, Persons and Domestic Relations, page 15.

Most states refuse annulment even where the wife is pregnant by another man if the husband has had premarital relations with her. See 4 Am.Jur.2d 467, § 39.

"A man cannot have a marriage annulled because his wife is pregnant by him at the time of the marriage, and an annulment will be denied to the husband where he marries without knowledge of his wife's pregnancy if prior to the marriage he had sexual relations with her. But where the wife is pregnant at the time of the marriage by one other than the husband, some courts hold this to constitute matrimonial incapacity so as to justify the annulment of the marriage but others have taken a contrary position.

Some statutes expressly make prenuptial pregnancy by a third person a ground for divorce or annulment of a marriage, but if the husband knew of the prenuptial pregnancy it is no ground for annulment."

This rule is also stated in Corpus Juris Secundum:

"Where a man marries in reliance on the false representation of the woman that she is pregnant by him, he may not have the marriage set aside. A fraudulent concealment of pregnancy by another man may invalidate the marriage, although in a number of jurisdictions this relief will not be granted where complainant had previously had illicit relations with the woman." 55 C.J.S. Marriage § 34, p. 873.

It is regretable that this court should see fit to further weaken the institution of marriage in a time when it needs all the support and strength that can be mustered upon its behalf. The majority opinion purports to follow an established rule of law when there is no rule. The Wisconsin case, Masters v. Masters, 13 Wis.2d 332, 108 N.W.2d 676, constitutes a departure from the rule. The Di Lorenzo case cited in the majority opinion from New York was not in point. There the girl represented a child as being the plaintiff's. After the marriage she admitted it was the offspring of another couple. This is not a case of a false pregnancy. The New York rule may be found in Donovan v. Donovan, 147 Misc. 134, 263 N.Y.S. 336, and Garfinkel v. Garfinkel, 9 A.D.2d 98, 191 N.Y.S.2d 574. The court in the Donovan case in commenting upon the Di Lorenzo case had this to say:

"When the plaintiff was accused, as he alleges, of being the father of an unborn child, if he was innocent he was called upon by every dictate of self-respect to deny the charge, and, if guilty, he should not be relieved from the subsequent solemn contract of marriage because the prospective mother did not give birth to a child.

"The foregoing is written with the case of Di Lorenzo v. Di Lorenzo, 174 N.Y. 467, 67 N.E. 63, 63 L.R.A. 92, 95 Am.St. Rep. 609 before me. The facts in the Di Lorenzo Case are so different from the facts in the case before me as to have no application to the instant case. In the Di Lorenzo Case the defendant fraudulently, during the plaintiff's absence from the state, procured a child, representing to the plaintiff that the child was his, while in fact she had not given birth to any child.

"To allow an annulment upon the facts in the instant case would open up a new field for people inclined to throw off the relation and responsibility of a sacred contract upon which the basis of our society rests."

The rule is well settled and for all practical purposes unanimous that a false claim of pregnancy will not support an action for annulment if the parties have in fact been engaging in premarital sexual intercourse. It is clearly stated in 15 A.L.R.2d 726, § 12 as follows:

"The courts are in general agreement that there may be no annulment where the parties have had sexual intercourse and the man marries the woman upon her representation that she is pregnant, even though it later appears that the representation was false, the general feeling being that the plaintiff has created his own dilemma and has no right to expect the courts to extricate him from it. Alabama, Mobley v. Mobley (1943) 245 Ala. 90, 16 So.2d 5. California, Gondouin v. Gondouin (1910) 14 Cal.App. 285, 111 P. 756. Florida, Brandt v. Brandt (1936) 123 Fla. 680, 167 So. 524. Massachusetts, Levy v. Levy (1941) 309 Mass. 230, 34 N.E.2d 650. New Jersey, Rhoades v. Rhoades (1950) 7 N.J.Super. 595, 72 A.2d 412. New York, Tait v. Tait (1893) 3

Misc. 218, 23 N.Y.S. 597; Donovan v. Donovan, supra, and Di Lorenzo v. Di Lorenzo, supra."

For the foregoing reasons, I respectfully dissent.