RENDERED: FEBRUARY 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1597-MR

RUSSELL KARL FALKENBURG                                    APPELLANT

v.                APPEAL FROM JESSAMINE CIRCUIT COURT
                  HONORABLE JEFF MOSS, JUDGE
                  ACTION NO. 19-CI-00758

ELIZABETH SOTELO SOLANO[1]                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE:  Russell Karl Falkenburg appeals from the Jessamine

Family Court's rulings on several matters in a proceeding in which Falkenburg

initially sought to dissolve, but later sought to annul, his marriage to Elizabeth

Sotelo Solano.  We affirm.

---

[1] Falkenburg refers to the appellee in his notice of appeal as Elizabeth Sotelo Solano, consistent with his petition for dissolution of marriage.  Although the dissolution decree indicated that the legal name of the respondent in the divorce action was Elizabeth Falkenburg, we will refer to the appellee as Solano based on the notice of appeal.

Before addressing the merits of Falkenburg's arguments, we must address the effect of Falkenburg's failure to comply with key briefing requirements and of Solano's failure to file an appellee brief.

**We Review for Manifest Injustice Due to Lack of Proper Preservation Statement and Lack of Specific Citations to the Record in Appellant's Brief**

Falkenburg's brief fails to comply with two key requirements for an appellant's brief. First, his brief does not comply with the requirement that the argument portion of an appellant's brief state if and how issues on appeal were properly preserved–meaning that the issues were raised to the family court so it had an opportunity to rule on them. *See* CR[2] 76.12(4)(c)(v) (emphasis added) (requiring that briefs for appellants contain: "An 'ARGUMENT' conforming to the statement of Points and Authorities, **with ample supportive references to the record** and citations of authority pertinent to each issue of law and **which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner**.").

Second, his appellant brief does not comply with the requirement that the appellant provide ample supporting references to **pages** of the written record and to **dates** and **times** of audio and/or video recordings wherein the appellant

---

[2] Kentucky Rules of Civil Procedure.

presented such issues to the family court. *See* CR 76.12(4)(c)(iv) (emphasis added) (requiring that appellant's brief contain: "A 'STATEMENT OF THE CASE' consisting of a chronological summary of the facts and procedural events necessary to an understanding of the issues presented by the appeal, **with ample references to the specific pages of the record, or tape and digital counter number** in the case of untranscribed videotape or audiotape recordings, or **date and time** in the case of all other untranscribed electronic recordings, supporting each of the statements narrated in the summary.").

When the appellant fails to include a proper preservation statement and fails to cite to the record in a manner enabling an appellate court to easily find where the issue was argued to the trial court, Kentucky case law makes clear that the reviewing appellate court has no obligation to search the record. *See*, *e.g.*, *S.T. v. Cabinet for Health and Family Services*, 585 S.W.3d 769, 777 (Ky. App. 2019); *Koteras v. Commonwealth*, 589 S.W.3d 534, 540 (Ky. App. 2018).

Briefs may be stricken for non-compliance with briefing requirements. CR 76.12(8)(a). And an appellate court may only review for manifest injustice when an appellant fails to provide a preservation statement with supporting references to the record. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("the manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation. If a party fails to inform

the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved."). *See also* CR 61.02 (emphasis added) ("A palpable error which affects the substantial rights of a party **may** be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief **may** be granted upon a determination that manifest injustice has resulted from the error.").

Our precedent also makes clear that although *pro se* litigants are perhaps not expected to make arguments with the same sophistication as lawyers, *pro se* litigants must comply with the briefing requirements in our civil rules and may suffer consequences for failing to do so. *See Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) (striking *pro se* appellant's brief and dismissing appeal due to several substantive failures to comply with briefing requirements–especially after he failed to correct errors in reply brief after being informed of his noncompliance); *Prescott v. Commonwealth*, 572 S.W.3d 913, 919 (Ky. App. 2019) (noting that despite some leniency afforded to *pro se* litigants, *pro se* litigants are expected to follow court rules so we limited our review to "those portions of Prescott's arguments supported by careful and correct citation to the record" and declined to fully analyze issues which were raised in brief in a manner not complying with governing rules).

In the instant case, we elect not to strike Falkenburg's brief so we do not summarily dismiss his appeal. However, we review the issues he raises on appeal only for manifest injustice since he failed to indicate if or how issues were preserved for appeal with specific references to the record. Furthermore, we may decline to address certain issues or provide less detailed analysis of some issues due to his failure to provide specific citations to pages of the written record and/or dates and times in recorded hearings wherein these issues were discussed in the family court. *See Prescott*, 572 S.W.3d at 919.

**We Opt Against CR 76.12(8)(c) Sanctions for Failure to File Appellee Brief**

Solano failed to file an appellee brief. So, we would have the authority to take steps such as treating the lack of appellee brief as a confession of error or simply accepting the appellant's statement of facts and issues as correct under CR 76.12(8)(c).[3] We also have discretion to **not** choose to exercise any of the options listed in CR 76.12(8)(c). *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Under the unique facts and circumstances of this case, including the issues presented and the deficiencies in Falkenburg's brief, we choose not to exercise any of the options listed in CR 76.12(8)(c).

---

[3] CR 76.12(8)(c)(ii) states that we could reverse the family court's judgment if the appellant's brief "reasonably appears to sustain such action;" however, we conclude that Falkenburg's brief does not appear to reasonably support reversing the family court's judgment as we discuss in further detail elsewhere in this Opinion.

## FACTS AND PROCEDURAL HISTORY

Falkenburg and Solano were married in February 2018 in Texas. They separated in June 2019, following Falkenburg's return to Texas after a military deployment. No children were born of their marriage.

In December 2019, Falkenburg filed a petition for dissolution of marriage in the Jessamine Family Court. He alleged that he had been living in Kentucky for more than 180 days, but that Solano was currently living in Texas and had not resided in Kentucky for more than 180 days. In addition to requesting dissolution of the marriage, he requested that the family court order Solano to return some personal property and investments. As in this appeal, he was unrepresented by counsel in the proceedings before the family court.

Solano filed, by counsel, a verified response to the divorce petition on or about February 13, 2020. Falkenburg filed a motion for default judgment and for sanctions a few days later. (His motion for default judgment argued other issues but did not claim that Solano failed to file a timely response to his petition.) Shortly thereafter, Falkenburg filed a pleading styled as a Motion to Deny/Motion to Modify.

-6-

In his motion, Falkenburg asked the family court to, among other things, amend his petition for dissolution of marriage to a petition for annulment.[4] He asserted that Texas law was controlling and allowed for annulment on the basis of fraud. And he alleged that Solano had acted fraudulently in failing to support her spouse and/or in otherwise failing to fulfill marital obligations.

Solano's filed response argued that default judgment was inappropriate due to her having actively participated in the proceedings. She also asserted that jurisdiction over the case was proper in Kentucky and that Kentucky law would apply to the case.

The family court explained at a hearing in early March 2020 that Kentucky law would apply in this Kentucky state court. The family court noted that Solano consented to its jurisdiction even though Solano lived in Texas. The family court stated that since Solano had already participated in the action before the motion for default judgment was filed, default judgment was not appropriate.

Although the family court judge orally indicated that the default judgment motion would be denied at the early March 2020 hearing, the family court did not enter a written order formally denying default judgment for a few

---

[4] In addition to requesting leave to amend his petition to one for annulment, Falkenburg also asked that Solano's requests for discovery be denied. But the family court ruled that discovery should proceed.

months. During spring 2020, Falkenburg filed additional motions including motions for summary judgment, annulment, and the judge's recusal.

Solano filed a motion to compel Falkenburg to cooperate with discovery and she requested a tele-video hearing. The family court emailed Falkenburg and Solano's counsel to schedule a teleconference hearing. Falkenburg expressed concerns in an email that he would waive his motion for recusal if he appeared at the hearing. The family court told him via email that appearing at a hearing would not waive his recusal motion and that if Falkenburg chose not to appear, the hearing would proceed in his absence. (Copies of this email correspondence were included in the written record, and it appears that the judge, Falkenburg, and Solano's counsel received copies of each email.)

The family court conducted the scheduled tele-video hearing in mid-June 2020. By the time of the hearing, Falkenburg had just filed a request for disqualification of the judge with the Chief Justice–along with an affidavit indicating why he believed the judge was biased against him.

Falkenburg did not attend the scheduled tele-video hearing. The hearing proceeded without him. The judge denied the motions for a default judgment and the motion for recusal. However, the judge declined to rule on other pending motions, due to the pending disqualification request.

The Chief Justice denied the request for disqualification. The case then proceeded further before the family court. Falkenburg filed additional motions, including a motion to amend the petition to one for annulment. The family court entered a written order in late September 2020, stating that Falkenburg's request to amend his petition to one for annulment was denied as untimely under KRS[5] 403.120.

The case then proceeded to trial, after which the family court entered a decree dissolving the marriage, dividing marital property, and assigning debt. The family court issued supplemental findings of fact and conclusions of law along with the decree. Falkenburg then filed a timely appeal. Other facts will be discussed as needed to resolve the issues raised on appeal.

## ANALYSIS

Falkenburg argues in his brief that the family court's judgment should be reversed because, in his view: 1) the family court judge erroneously denied his request to amend his petition to one for annulment rather than dissolution of the marriage, 2) the family court failed to consider or follow federal law about immigration marriage fraud, 3) the family court judge should have recused, and 4) the family court improperly conducted a final divorce hearing and/or improperly

---

[5] Kentucky Revised Statutes.

divided marital property and assigned marital debt. We disagree, as we conclude that the family court's handling of these issues did not result in manifest injustice.

### I) No Manifest Injustice in Denying Leave to Amend Petition

In its written order denying leave to amend the petition, the family court noted that Solano filed her response to the petition before Falkenburg requested to amend his petition for divorce into a petition for annulment. Solano objected to the request to amend the petition. The family court correctly determined that the court's permission was required for amendment. CR 15.01 (subject to other exceptions not relevant here such as a one-time request to amend a pleading **before** the other side files a response, providing that parties may only amend pleadings with the opposing party's consent or with leave of court "and leave shall be freely given when justice so requires.").

The family court explained that it was denying leave to amend the petition because Falkenburg's request to invalidate the marriage based on alleged fraud was untimely under KRS 403.120(2)(a). The family court noted: "KRS 403.120(2)(a) requires that an action to declare a marriage invalid based on fraud as to the essentials of the marriage must be brought within 90 days of the petitioner becoming aware of the fraud."[6] (Record (R.), p. 211.)

---

[6] *See* KRS 403.120, which provides in pertinent part:

The family court found that Falkenburg "recounts in his pleadings that upon discovering [Solano's] alleged fraud he left Texas and came to Kentucky" in early June 2019, but that Falkenburg waited until December 2019 to file his divorce petition. The family court explained that while Falkenburg was correct in believing that he must establish 180 days' residency in Kentucky before filing for divorce, "under Kentucky law his delay in requesting annulment prohibits him from pursuing an annulment." (R., p. 211.) Viewing Falkenburg's request for annulment as time-barred, the family court denied the request to amend.

Falkenburg filed an objection and/or motion for the family court to reconsider this order. The family court construed this as a motion to alter, amend, or vacate. It denied this motion/objection for "substantive" reasons,[7] stating that it

---

(1) The Circuit Court shall enter its decree declaring the invalidity of a marriage entered into under the following circumstances:

(a) . . . a party was induced to enter into a marriage by force or duress, or by fraud involving the essentials of marriage;

. . . .

(2) A declaration of invalidity under paragraph (a), (b) or (c) of subsection (1) may be sought by any of the following persons and must be commenced within the times specified, but only for the causes set out in paragraph (a) may a declaration of invalidity be sought after the death of either party to the marriage:

(a) For a reason set forth in paragraphs (a) and (b) of subsection (1), by party or by the legal representative of the party who lacked capacity to consent, who was the offended party or did not know of the incapacity, no later than 90 days after the petitioner obtained knowledge of the described condition[.]

[7] Although the family court denied the motion for substantive reasons, its order also indicated that it believed the motion was not timely filed.

-11-

understood "that there is a difference of opinion" about its ruling but that "nothing was offered from a legal perspective to persuade the [c]ourt to change its prior order." (R., p. 223.)

From our review of Falkenburg's written objection and/or motion, Falkenburg did not dispute therein the family court's finding that he asserted having discovered alleged fraud by Solano and therefore left for Kentucky in early June 2019 in his pleadings. The family court correctly noted that Falkenburg's petition for dissolution was filed in December 2019. Falkenburg's request to amend the petition to one for annulment was not filed until February 2020. Thus, we discern no manifest injustice in the family court therefore determining that based on Falkenburg's own admitted discovery of alleged fraud in early June 2019, his failure to request annulment within 90 days of this discovery meant that his annulment request was time-barred under KRS 403.120.

As Falkenburg points out, leave to amend a pleading is to be "freely given when justice so requires" under CR 15.01. But based on his own admitted discovery of facts underlying his fraud claims by June 2019, we discern no manifest injustice in the family court's determination that justice did not require permitting Falkenburg to amend his petition to annulment some eight months after he claimed to have discovered fraud by Solano. A court does not err by denying

leave to amend a pleading if the proposed amendment is futile. *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 869-70 (Ky. App. 2007).

Although Falkenburg claims that the 90-day time limit to pursue invalidation of a marriage after discovering alleged fraud in KRS 403.120 does not begin to run until a party has established residency in Kentucky for 180 days, he cites no authority specifically supporting his argument.[8] Perhaps this specific argument might merit further consideration when an appellant's brief properly shows how and where it was preserved for review–unlike here. But we decline to address this argument further given the lack of proper preservation statement and the lack of authority cited specifically supporting this argument. In short, we discern no manifest injustice in the family court's denying Falkenburg's request for leave to amend his divorce petition to one for annulment; thus, we affirm on this issue.

---

[8] Falkenburg quotes *Parks v. Parks*, 418 S.W.2d 726, 726 (Ky. 1967) ("Our statute, KRS 402.030, authorizes a court having equity jurisdiction to 'declare void any marriage obtained by . . . fraud.'"). But *Parks* did not concern any jurisdictional or other issues about how a person's desire to seek annulment might be affected by the length of his or her residency in Kentucky. In fact, *Parks* did not and could not have addressed KRS 403.120's requirement for requesting invalidation of marriage within 90 days of discovering facts allegedly constituting fraud because *Parks* pre-dates KRS 403.120, which was enacted in 1972. And despite Falkenburg's citation of *Eck v. Eck*, 793 S.W.2d 858 (Ky. App. 1990), for the same quoted material, *Eck* does not contain the quote from *Parks* and does not discuss the 90-day time limit for seeking to invalidate a marriage for fraud in KRS 403.120 nor any length of residency requirement for seeking amendment.

**II)** **Family Court's Not Discussing Federal Law Regarding Immigration Marriage Fraud Not Manifest Injustice Under Facts of this Case**

Falkenburg asserts in his brief that the family court incorrectly claimed that the federal Immigration Marriage Fraud Act (IMFA) of 1986 and related federal law do not apply in Kentucky state family court. He argues that federal courts hear only criminal cases about immigration fraud. But he perceives that state courts can hear civil cases relating to immigration marriage fraud, with federal courts focusing on fraud affecting the federal government and state courts focusing on fraud affecting individuals.

Falkenburg claims that state courts in other jurisdictions have "recognized the authority of the IMFA with annulment as the remedy" on page 7 of his brief. He contends that the IMFA has no statute of limitations about immigration marriage fraud and that it is against Kentucky's public policy to sanction marriages entered into for purposes of illegally obtaining immigration advantages–just as Kentucky allows for the invalidation of other marriages based on other types of fraud. He concludes this argument stating, "for Court to ignore the act of fraud based on the 'opinion' that the type has no State relevance, is erroneous, and because the type, being immigration, is regulated by Congress, Kentucky courts have a duty to acknowledge." (Appellant brief, p. 9.)

In denying the motion to amend the petition to one for annulment and in declining to discuss the IMFA or other federal law, the family court stated: "As stated to [Falkenburg] in [c]ourt previously, it is not within the jurisdiction of this state court to determine whether [Solano] is legally in the United States. Immigration is left to the Federal Courts." (R., p. 208.)

Falkenburg concedes in his brief that criminal actions regarding immigration must be litigated in federal court. There appears to be no dispute that the family court could not, for example, determine if Solano should be deported for alleged immigration marriage fraud.

We construe the aforementioned quote from the family court as indicating that it lacked jurisdiction over criminal proceedings regarding alleged immigration marriage fraud. And it was not necessary for the family court to determine whether any party here had violated any provision in the federal IMFA for purposes of the proceedings before it–which began with Falkenburg's request to terminate the marriage through divorce followed by his untimely, contested request to amend the petition to one for annulment. Had Falkenburg timely sought to annul or invalidate the marriage on the basis of fraud within 90 days of his discovery of facts causing him to believe that Solano had committed fraud, perhaps discussion of the IMFA and related federal case law would have been in order to consider whether there were grounds to annul based on immigration marriage-

related fraud. But we discern no manifest injustice in the family court's declining to discuss the IMFA as that was unnecessary for it to resolve the proceedings before it under the facts here. So, we affirm on this issue.

**III)**     **Family Court's Denying Recusal Motion Not Manifest Injustice**

Falkenburg asserts in his brief that the family court judge should have recused because the judge adopted and raised a Latina immigrant child, is involved in missionary work and/or outreach programs to Latino countries, and has assisted others with adopting immigrant children. Although opining that this involvement is commendable, Falkenburg also asserts that the family court judge's "deep involvement within the topic creates a situation where he is willing to bend, break and ignore the law on behalf of immigrants to the detriment of US Citizens while depriving Pro Se litigants of their rights[.]" (Appellant's brief, p. 16.)

Falkenburg also asserts that in his motion for the judge's recusal, he addressed the judge's allegedly criticizing a political opponent for being divorced. He asserts that the judge holds opinions that anyone "who has experienced relationship issues or been divorced, is less in ability than he, merely because he has not been, and isn't fit to question his 'opinions' as a legal and relationship expert." Then Falkenburg states: "So how much less would he treat [Falkenburg], a mere layman begging for relief, duped by a female immigrant, his favorite." (Appellant's brief, p. 17.)

Falkenburg notes that he also requested that the Chief Justice disqualify the judge. He admits that the Chief Justice determined that Falkenburg had not proven bias, but he takes issue with the Chief Justice's conclusion.

He also alleges the judge entered an order when the judge knew Falkenburg would be out of town so Falkenburg would not be able to timely file an objection. He also generally contends that the judge's orders were entered in violation of the constitution and other legislation. More specifically, Falkenburg claims the judge ruled on all pending motions during an improper *ex parte* hearing with opposing counsel on June 16, 2020. We disagree with this contention.

The June 16, 2020 hearing was conducted via Skype or similar platform. The judge spent a lot of time in the hearing looking through items in the case record trying to find alternate ways to contact Falkenburg, who had apparently received notice of the hearing but might be experiencing technical problems or might be reluctant to attend. The judge recalled that he told Falkenburg via email that his attendance at a hearing would not waive his motions. The judge noted the pending motion for disqualification before the Chief Justice, with accompanying affidavit filed with the circuit clerk, as well as the pending motion for recusal in his court. The family court judge decided to address the recusal motion before going on to other matters.

The judge found that the motion filed in his court did not address the factors regarding recusal in KRS 26A.015 so he denied it. He construed Falkenburg's motion as calling for recusal because of the judge's having adopted a Latina child, because of the judge's not having been divorced, and because the judge had not entered judgment in Falkenburg's favor. Although the judge briefly noted he would deny Falkenburg's motion for default judgment, the judge indicated he would hold off on ruling on other matters until the disqualification request before the Chief Justice was resolved.

Based on our review of the record and applicable law, there was no manifest injustice in the family court judge's declining to recuse or in his discussions with opposing counsel during the mid-June 2020 hearing. Falkenburg has pointed to no objective evidence of bias and we cannot say that the alleged facts would put a reasonably prudent person in fear of not receiving a fair and impartial trial. Considering that a judge has a duty to sit on cases unless there are valid reasons for recusal, there was no reversible error in the judge's denial of recusal here. *See Clay v. WesBanco Bank, Inc.*, 589 S.W.3d 550, 557 (Ky. App. 2019) (upholding denial of recusal based on lack of objective evidence of bias after noting trial court's duty to sit absent valid reasons for recusal and appellate court's duty to consider whether a reasonably prudent person would be in fear of not receiving a fair and impartial trial based on the alleged facts). *See also Stopher v.*

-18-

*Commonwealth*, 57 S.W.3d 787, 794-95 (Ky. 2001) (party seeking judicial recusal

has an "onerous" burden of proof to show facts demonstrating a serious

impairment of judge's impartiality swaying his/her judgment; mere belief that

judge will not conduct a fair trial is not enough to require recusal; even some

expressions of frustration with litigant by judge not enough to merit recusal[9] so

long as judge does not violate litigant's rights and conducts a basically fair if

imperfect trial).

Assuming that the judge had adopted a Latina immigrant child and/or

been involved in missionary work or outreach programs to benefit immigrants or

those seeking to adopt immigrant children, this does not show that the judge would

favor any Latino immigrant litigant in court proceedings or seek to further illegal

immigration activity. We will not assume that any judge who had ever legally

adopted an immigrant child or assisted others with legally adopting other

---

[9] Falkenburg claims in his brief that at one point in a hearing on March 4, 2020, the judge "snapp[ed]" at him because Falkenburg indicated he wanted to educate himself about the law–although Falkenburg did not indicate an approximate time this alleged "snapping" occurred. Based on our review of recorded hearings in the record, Falkenburg said he would look into an issue after the judge indicated how he would rule on some issues. The judge then calmly asked Falkenburg what he meant about looking into the issue. Then Falkenburg stated he needed to do some research and the judge paused briefly, looked a bit stunned and then just said "okay" before going on to other matters. (Video Record 3/4/2020, 10:56:48-10:57:05.) But we are unaware of any instances of the family court judge raising his voice in anger or using rude or abusive language from our review of this recorded hearing. Furthermore, an isolated expression of frustration with a party's conduct does not necessitate recusal so long as the judge does not violate the party's rights and affords him a fair trial. *Stopher*, 57 S.W.3d at 794.

immigrant children would purposefully try to evade federal immigration law or to show favoritism towards immigrant litigants.

Additionally, if the judge made any comments indicating that people who had relationship problems or had ever sought divorce were not relationship nor legal experts, this would not demonstrate bias for one party and against the other in this case. Both parties sought to end their marriage in some manner and obviously had experienced relationship problems with each other. Moreover, Falkenburg has not shown where in the record we may view any alleged comments of this nature (casting aspersions on people seeking divorce or having relationship problems) by the judge in this proceeding.

Furthermore, Falkenburg has failed to specifically cite to any portion of the record showing that the family court judge demonstrated any bias against him or in favor of Solano. On the contrary, from our examination of recorded hearings, the family court judge treated all parties with respect and took steps to allow both parties to develop and present their cases.

As for Falkenburg's allegation of an improper *ex parte* hearing conducted in his absence, Falkenburg received notice of the hearing and was advised that it would proceed if he elected not to attend. Thus, we have our doubts whether the hearing could even fairly be considered a true *ex parte* hearing. *See ex parte*, BLACK'S LAW DICTIONARY (11th Ed. 2019) ("[d]one or made at the instance

and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest") and *ex parte proceeding* ("[a] proceeding in which not all parties are present or given the opportunity to be heard. – Also termed *ex parte hearing*.").

Furthermore, other than discussing scheduling and administrative matters[10] such as looking in the record for more contact information for Falkenburg, nothing of substance occurred in Falkenburg's absence–so any *ex parte* hearing was not an improper one. The family court simply noted it was denying the motion for default judgment (consistent with its earlier indication that default judgment would be denied at a previous hearing). Similarly, it stated it was denying the motion for recusal for failure to state sufficient grounds under KRS 26A.015. It did not hear any argument on these motions from Solano's counsel and it notified Falkenburg of its rulings on his default and recusal motions and the court's reservation of other issues via written order entered on June 17, 2020. Thus, given the lack of argument on pending motions by Solano's counsel and Falkenburg's receiving prior notice of the hearing as well as being apprised of what occurred at the hearing, we reject Falkenburg's assertion that the family court

---

[10] The family court and Solano's counsel discussed such matters as when a ruling from the Chief Justice on the disqualification request might be expected and how the family court would contact both parties later to schedule further hearings on other pending motions if the disqualification request was denied by the Chief Justice.

improperly conducted an improper *ex parte* hearing on June 16, 2020. *See* Canon 2, Rule 2.9(A)(1) of the Kentucky Code of Judicial Conduct (SCR[11] 4.300) ("When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided: (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.").

In short, we conclude that no manifest injustice resulted from the family court's conduct of the June 16, 2020 hearing nor from the family court judge's declining to recuse.

### IV) No Manifest Injustice in Family Court Having a Final Evidentiary Hearing on Dissolution or in its Resolution of Property Issues

Lastly, Falkenburg generally argues that the final dissolution hearing and "assignment of property and debt" were improper. (Appellant's brief, p. 20.) Apparently, Falkenburg argues no dissolution trial should have occurred because he believes that the marriage should have been annulled instead. And perhaps Falkenburg intended to argue that the marriage was never valid so that there was

---

[11] Kentucky Supreme Court Rules.

really no marital property to divide. Again, there was no manifest injustice in the family court's refusal to entertain Falkenburg's belated attempt to annul the marriage.[12]

Falkenburg also suggests that various specific aspects of the way the family court divided marital property and assigned marital debt was erroneous. For example, Falkenburg takes issue with the family court's finding that several jewelry items (with a total worth over $4,000 according to Falkenburg's testimony) were gifts from Falkenburg to Solano or other family members and therefore not marital property subject to division. Despite Falkenburg's assertions that he bought the jewelry as investments rather than gifts, the family court's finding was not clearly erroneous considering that Solano testified to Falkenburg presenting these items to her and family members as gifts.

On appeals like this, from cases where a court tries a case on the facts without a jury, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. And as our Supreme Court has stated: "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d

---

[12] We also note that KRS 22A.020(3) provides: "there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage." In other words, the dissolution of the marriage itself cannot be disturbed on appeal although appellate courts can consider whether to reverse on such issues as property division, child custody and support, or maintenance.

336, 354 (Ky. 2003). Based on our review of the record and applicable law, there is nothing to indicate any manifest injustice in the family court's conduct of the final evidentiary hearing or division of marital property or assignment of debts.

Further arguments raised in Falkenburg's brief which we have not discussed herein have been determined to lack merit and/or relevancy to our resolution of this appeal. To the extent that Falkenburg argues that any Kentucky state statute is unconstitutional, we decline to discuss this issue as Falkenburg failed to notify the Attorney General of any constitutional challenge to any Kentucky statute in the family court proceeding or in this appeal in violation of KRS 418.075. *A.H. v. Louisville Metro Government*, 612 S.W.3d 902, 913 (Ky. 2020) (compliance with KRS 418.075 is mandatory so courts are prohibited from reviewing constitutional challenges to Kentucky statutes when the Attorney General has not been properly notified).

## CONCLUSION

For the foregoing reasons, the judgment of the Jessamine Family Court is **AFFIRMED**.

CETRULO, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:          NO BRIEF FOR APPELLEE.

Russell Karl Falkenburg, *pro se*
Nicholasville, Kentucky